In the Matter of L. J. W., Appellant.

No. 9793.

District of Columbia Court of Appeals.

Argued Sept. 30, 1976.

Decided March 1, 1977.

————

Surell Brady, Public Defender Service, Washington, D. C., for appellant. Robert A. W. Boraks, Public Defender Service, Washington, D. C., was on the brief, for appellant.

E. Calvin Golumbic, Asst. Corp. Counsel, Washington, D. C., with whom John R. Risher, Jr., Corp. Counsel, Louis P. Robbins, Principal Asst. Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, Washington, D. C., were on the brief, for appellee.

Before NEBEKER, YEAGLEY and HARRIS, Associate Judges.

YEAGLEY, Associate Judge:

Appellant appeals from juvenile court convictions of burglary in the first degree (D.C.Code 1973, § 22–1801), two counts of assault with a dangerous weapon (D.C.Code 1973, § 22–501), and two counts of robbery (D.C.Code 1973, § 22–2901). On appeal he argues that (1) the nighttime search of his home was pursuant to a defective search warrant and the evidence uncovered should have been suppressed; (2) his severance motion should have been granted when the judge heard a witness testify that appellant's corespondent confessed to the crime and implicated appellant; and (3) the same judge was barred from presiding over the detention, suppression, and factfinding hearings at different stages of appellant's case. For the reasons set forth, we affirm.

On April 3, 1975, at approximately 1:45 a. m., three persons wearing ski masks and sunglasses entered the bedroom of the victims, assaulted the husband and wife with guns, and robbed them of various items of personal property. A fourth burglar remained downstairs. None of the assailants were ever identified by the victims.

At approximately 4 p. m. that same day, a young man, who later testified at trial, told Detective Thiebeau, a Metropolitan Police Department detective, that D.G. (appellant's co-respondent at trial) had informed him that appellant, two others, and D.G. "did a hustle at [the victims'] house." The young man had been inside appellant's home and had seen what subsequently was identified as the victims' personal property.

Detective Thiebeau worked on the case from 4 p. m. on, and, after discussing the search warrant affidavit with an Assistant United States Attorney, drove to the issuing judge's home to obtain the search warrant. The warrant was signed by the judge between 10:30 and 11 p. m., after the judge questioned the detective under oath about the prospective search. The warrant, which on its face authorized a nighttime search, was executed that night. Appellant's home was searched from about 11:30 p. m. to 2 a. m. and much of the victims' stolen personal property was recovered.

██ Appellant's first contention is that the search warrant authorizing the nighttime search of his home was invalid because the application for the warrant did not contain, in writing, any of the three D.C.Code

grounds authorizing a nighttime search.[1] The government argues that although the specific nighttime authorization grounds were not included in the written application,[2] the detective requesting the warrant told the issuing judge, under oath, why this nighttime warrant was needed. No record was made at that time, but at the suppression hearing the detective testified:

> I told him that in that vicinity down there, property does move quickly and that that's why we need this warrant, and that's why we were bothering him in his home because of the fact that we were afraid of losing the property if we didn't act quickly.

The issue is whether that explanation was required by statute to be in the written application for the search warrant. While it is much preferable to have a contemporaneous written record of the facts presented to the issuing judge or magistrate in order to avoid subsequent memory problems,[3] in the instant case we find no reversible error based upon the oral recitation under oath of the facts necessitating this nighttime search.

We turn first to the actual statutory language involved. D.C.Code 1975 Supp., § 23–522. Subsection (a) states that "[e]ach application for a search warrant shall be made in writing . . .," and subsection (b) mandates what "[e]ach application shall include." Subsection (c) permissibly ("may") allows an applicant to include in the application a request, with stated reasons, "that the search warrant be made executable at any hour of the day or night . . . ." But in any event, the minimum required to obtain a nighttime warrant is that "[a]ny request made pursuant to this subsection [nighttime authorization] must be accompanied and supported by allegations of fact supporting such request." It is those supporting allegations of fact which we hold may be relayed orally and under oath to the issuing judge or magistrate.[4]

There are no D.C. cases exactly on point,[5] but many analogous federal cases support our holding.[6] *See, e. g., United States v.*

---

1. D.C.Code 1975 Supp., § 23–522(c) provides:

 The application may also contain a request that the search warrant be made executable at any hour of the day or night upon the ground that there is probable cause to believe that (1) it cannot be executed during the hours of daylight, (2) the property sought is likely to be removed or destroyed if not seized forthwith, or (3) the property sought is not likely to be found except at certain times or in certain circumstances. Any request made pursuant to this subsection must be accompanied and supported by allegations of fact supporting such request.

2. The written warrant application asserted only that the detective was "positive" that the goods were at appellant's house. This was the standard for authorizing nighttime searches under the pre-1972 Federal Rules of Criminal Procedure (Rule 41(c)).

3. *See Campbell v. State of Minnesota*, 487 F.2d 1, 4–5 (8th Cir. 1973); *United States v. Berkus*, 428 F.2d 1148, 1152 (8th Cir. 1970). We note that a 1972 amendment to the federal search warrant rule expressly permits oral supplementation of a search warrant affidavit "provided that such [supplementation] shall be taken down by a court reporter or recording equipment and made part of the affidavit." Fed.R. Crim.P. 41(c).

4. The search warrant itself need not include these supporting allegations of fact. The warrant, however, must, on its face, authorize "execution at any time of day or night" where the issuing officer has found cause for such execution under § 23–522(c). D.C.Code 1975 Supp., § 23–521(f)(5).

5. *See generally United States v. Thomas*, D.C. App., 294 A.2d 164, *cert. denied*, 409 U.S. 992, 93 S.Ct. 341, 34 L.Ed.2d 258 (1972); *United States v. Green*, 331 F.Supp. 44 (D.D.C.1971); *United States v. Gooding*, 328 F.Supp. 1005 (D.D.C.1971), *rev'd*, 155 U.S.App.D.C. 259, 477 F.2d 428 (1973), *aff'd*, 416 U.S. 430, 94 S.Ct. 1780, 40 L.Ed.2d 250 (1974).

6. The federal cases primarily deal with whether the oral supplementation can be used to bolster the probable cause showing, not the degree of "positiveness" needed for a nighttime warrant. The possibility of an inadequate probable cause showing because of a hastily drawn affidavit or the possibility of "manufactured" probable cause when the affiant later "remembers" what he orally testified to before the issuing judge strikes directly at the constitutionality of the warrant in Fourth Amendment terms. There is no challenge in the instant case that the requisite probable cause was not shown.

 *But see* the dissenting opinion of Justices Brennan and Marshall to the denial of certiora-

*Marihart*, 472 F.2d 809, 811, 815 (8th Cir. 1972) (en banc) (holding that a written affidavit, together with the affiant's supplementing sworn testimony and the magistrate's personal knowledge about the informant could be used to establish the Fourth Amendment's probable cause requirement for the issuance of a search warrant); *Leeper v. United States*, 446 F.2d 281, 285–86 (10th Cir. 1971), *cert. denied*, 404 U.S. 1021, 92 S.Ct. 695, 30 L.Ed.2d 671 (1972) (pre-1972 Fed.R.Crim.P. 41(c)) (holding that even if the written affidavit failed to establish probable cause, the affiant's oral testimony before the issuing officer permissibly and adequately supplemented the affidavit). *See also Gillespie v. United States*, 368 F.2d 1, 3–4 (8th Cir. 1966); Annot., 24 A.L.R.Fed. 107 (1975).

In *United States v. Ravich*, 421 F.2d 1196 (2d Cir.), *cert. denied*, 400 U.S. 834, 91 S.Ct. 69, 27 L.Ed.2d 66 (1970), a case relied on by the trial court in denying appellant's motion to suppress, the search warrant met the required Fourth Amendment's probable cause standard, but the issuing judge was only convinced of the former Rule 41's "positiveness" requirement for nighttime searches because of the oral testimony of the requesting officers. Moreover, that warrant on its face did not authorize a nighttime search. The court sustained the nighttime search in spite of the warrant's formal deficiencies.

In the instant case, as in *Ravich*, the issuing judge "must have known that the warrants [were to] be executed at night; that was the very reason why the officers had come to his home." *United States v. Ravich, supra* at 1201. In addition, the requesting detective under oath informed the issuing judge, in substance, of one of the D.C.Code's reasons for authorizing a nighttime search: "(2) the property sought is likely to be removed or destroyed if not seized forthwith." D.C.Code 1975 Supp.,

§ 23–522(c)(2). Furthermore, this warrant, on its face, authorized the nighttime search. We therefore conclude that the warrant was both properly issued and properly executed.

Appellant's second issue is that the trial court committed reversible error when it refused to grant appellant a separate trial after hearing a witness testify that appellant's co-respondent had implicated appellant in corespondent's statements about the burglary. Citing *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), appellant argues that trial before a judge without a jury does not justify a different result.

 This court has recognized the "presumption that a trial court will disregard all irrelevant matters in making its adjudications." *In re W.N.W.*, D.C.App., 343 A.2d 55, 58 (1975). Where, as here, the evidence presented is admissible for one purpose (admission of co-respondent) but not admissible for another purpose (implicating appellant in the crime), "[t]he judge will be presumed to have disregarded the inadmissible and relied on the competent evidence." McCormick on Evidence § 60, at 137 (2d ed. 1972).

The core of *Bruton v. United States, supra*, was that a jury would not be able to do what we presume the judge is able to do, namely, accept evidence for one purpose and disregard it for another. *Id.*, 391 U.S. at 129, 88 S.Ct. 1620. *Cockrell v. Oberhauser*, 413 F.2d 256, 258 (9th Cir. 1969), *cert. denied*, 397 U.S. 994, 90 S.Ct. 1130, 25 L.Ed.2d 401 (1970). The jury lacks the judge's "trained and disciplined judicial intellect" which permits such evidence differentiation, a "mental discipline [that] is supposed to be part of the resources which the trial judge brings to his task". *United States v. Walker*, 154 U.S.App.D.C. 6, 8, 473 F.2d 136, 138 (1972).

ri in *Christofferson v. Washington*, 74 Wash.2d 154, 443 P.2d 815 (1968) (en banc), *cert. denied*, 393 U.S. 1090, 89 S.Ct. 855, 21 L.Ed.2d 783 (1969) (Justices Brennan and Marshall argue that the Fourth Amendment requirement of a

finding of probable cause before a search warrant can be issued also requires that finding to be supported by a written record before the issuing magistrate).

The trial court recognized the crucial jury/judge trial distinction when it denied appellant's severance motion: "Well, you may have a really valid point if this were a jury trial, but this is not a jury trial. The Court considers this." The trial judge knew of the limited purpose for which the witness' testimony was admissible and "[n]othing in *Bruton* suggests that a judge is incapable of applying the law of limited admissibility which he has himself announced." *Cockrell v. Oberhauser, supra* at 258. Appellant cannot point to any references showing the judge improperly considered the witness' statement against appellant, and thus the presumption that the irrelevant evidence was not considered has not been overcome. *In re M.D.J.,* D.C.App., 346 A.2d 733, 736 (1975); *In re W.N.W., supra* at 59.

Appellant's final contention is that the same trial judge should not have presided at his (1) detention/probable cause hearing as well as at his (2) suppression hearing and at his (3) factfinding hearing. The first two hearings provided the judge with "adverse social information" and appellant's confession (later suppressed) that had to be ignored at the factfinding hearing; appellant contends this put an unwarranted strain on the purity of the factfinding function and ultimately denied him a fair trial.

The same judge may conduct both the detention and factfinding hearings unless objected to by "the child or his parent, guardian or custodian." D.C.Code 1973, § 16–2312(j). This court in *In re M.D.J., supra* at 736, and *In re W.N.W., supra* at 58, held that disqualification under § 16–2312(j) is mandated only upon objection, and we held:

> The fact that the trial judge successively presided over two proceedings involving appellant provides an insufficient basis for finding of reversible error. [*In re W.N.W., supra* at 58.]

Appellant did not object[7] and is thus precluded now from asserting this issue as error on appeal. *See also* Super.Ct.Juv.R. 51.

*Affirmed.*

---

7. Appellant argues that his motion for severance on *Bruton* grounds was the equivalent of a § 16–2312(j) objection. Even if this were the equivalent, which we find it is not, there remains an issue of whether the objection was timely under Super.Ct.Juv.R. 12(b)(1) and (2).