**Reginald V. UPSHUR, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 95–CF–885.

District of Columbia Court of Appeals.

Argued May 9, 1996.
Decided July 30, 1998.

Robert S. Becker, appointed by this court, Washington, DC, for appellant.

Chun T. Wright, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney at the time the brief was filed, and John R. Fisher, Thomas J.

Tourish, Jr., and Richard Nelson, Assistant United States Attorneys, were on the brief, for appellee.

Before WAGNER, Chief Judge, and FARRELL, Associate Judge, and MACK, Senior Judge.

WAGNER, Chief Judge:

Following a trial by the court, appellant, Reginald V. Upshur, was convicted of possession of a controlled substance (cocaine) (D.C.Code § 33–541(d) (1998)). He argues for reversal on the ground that the trial court erred in denying his motion to suppress the drugs. The resolution of this issue depends upon whether the particular facts surrounding the search and seizure provided the level of suspicion necessary to support the investigatory stop and search for an object inside appellant's closed fist under the principles of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). We hold that the search was unreasonable under the circumstances. Accordingly, we reverse.[1]

## I.

### A. *The Evidence*

Officer Jed D. Worrell, a Metropolitan police officer, testified at the pre-trial hearing on the motion to suppress that at approximately 11:35 p.m., on January 4, 1995, he and his partner, Officer Seth Weston, were patrolling the area of 16th and D Streets, Southeast, Washington, D.C., a residential neighborhood, in a marked police cruiser. Officer Worrell testified that the area is "known for open drug transactions, drug use, [and] weapons offenses." Officer Worrell said that he and his partner saw appellant standing in the street at the driver's side of a vehicle parked on the south side of D Street. Appellant was slightly bent as he reached into the car. According to Officer Worrell, it appeared that appellant was giving the driver of the vehicle money and receiving some object in exchange.

When appellant saw the police car, he "started walking away from the vehicle with his hands balled, his fist balled as if he was holding something."[2] According to ·Officer Worrell, "when [the officers] initially saw [appellant] leaning over the vehicle, he and the driver of the vehicle were exchanging money. As he walked away from the vehicle, his fists were balled, but [Officer Worrell] could no longer see any money visible in his hand." When asked why he was focusing on appellant's hand, Officer Worrell testified that based upon his experience, he thought that "it could have been a possible narcotic transaction that took place."

Officer Worrell grabbed appellant as he walked away "just a few steps," "took him a couple of inches," and handed him over to Officer Weston who "grabbed him at that point." Appellant's fist was still balled, so the officers told him to open his hand. Officer Weston attempted to place appellant's hands on the parked scout car, but "it took several efforts to lift his arms and to place them on the car."

Officer Worrell attempted to stop the driver of the car, but the car "sped off at a high rate of speed." Officer Worrell turned back towards Officer Weston and appellant and observed "objects falling from [appellant's] hand, several objects," as Officer Weston moved appellant from the front of the car. Officer Worrell recovered from that location three ziplocks of a white substance, which later tested positive for crack cocaine.

### B. *The Trial Court's Ruling*

The trial court denied appellant's motion to suppress evidence, finding that the officers had a reasonable, articulable suspicion for a

---

1. Appellant concedes in his reply brief that his claim that he was denied his Sixth Amendment right to a jury trial is foreclosed by *Foote v. United States,* 670 A.2d 366 (D.C.1996). We further reject his argument, made for the first time on appeal, that the bench trial before the same judge who heard the suppression motion denied him the right to an impartial judge. *Cf. In re L.J.W.,* 370 A.2d 1333, 1337 (D.C.1977). Finally,

the asserted claim of actual bias by the trial judge is unsupported.

2. Although the trial court stated in its ruling, quoted in the dissenting opinion, that appellant "walk[ed] briskly away," the government concedes in its brief, and the record supports, that there was no evidence regarding how quickly appellant walked away.

*Terry* stop and probable cause to arrest him after he dropped the drugs. The trial court rejected appellant's arguments that the officers witnessed only a one-way exchange.

### C. The Bench Trial

At the subsequent bench trial, the government called Officer Worrell who testified to substantially the same facts as he did at the suppression hearing. Appellant testified on his own behalf. He denied having any drugs that night, and he claimed that the drugs were found in the same spot where "Tank," the man to whom he was speaking, had parked his car.

### II.

■ Appellant argues that the trial court erred in denying the motion to suppress because the police lacked a reasonable articulable suspicion when they stopped him and began searching him for drugs. Appellant also argues that the initial stop was transformed into an arrest when the officers "grabbed" him, and there was no probable cause for the arrest. The government contends that the totality of the circumstances justified the police in conducting an investigatory stop and a protective search of appellant's closed hand during the course of this investigatory stop.[3]

■ It is well established that the police may detain a person briefly on less than probable cause provided the officer has a reasonable suspicion based on specific articulable facts that the person is involved in criminal activity. *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989); *Terry, supra,* 392 U.S. at 21–22, 88 S.Ct. at 1880; *Peay v. United States,* 597 A.2d 1318, 1319–20 (D.C.1991) (en banc). A minimal level of objective justification is required to support such an investigatory stop, which is "less demanding than that required

for probable cause" and "considerably less than proof of wrongdoing by a preponderance of the evidence." *Sokolow,* 490 U.S. at 7, 109 S.Ct. at 1585; *accord, Holston v. United States,* 633 A.2d 378, 381 (D.C.1993); *Peay,* 597 A.2d at 1320. In *Terry,* the Supreme Court upheld the validity of a protective search of a suspect for weapons during the course of an investigatory stop where the officer had reasonable grounds to believe that the suspect was armed and posed a danger to himself or others. 392 U.S. at 30, 88 S.Ct. at 1884. The government relies upon the principles distilled from these cases in contending that the circumstances in this case justified the protective search of appellant's closed fist during a *Terry* stop.

■ In reviewing the trial court's ruling denying the motion to suppress, our role is "to ensure that the trial court had a substantial basis for concluding that no constitutional violation occurred." *Brown v. United States,* 590 A.2d 1008, 1020 (D.C.1991). We conclude that the circumstances of this case do not support the conclusion that the officers possessed an objectively reasonable belief that appellant was armed and posed a danger when they grabbed his hand and attempted to open his closed fist to search for drugs. *See Terry, supra,* 392 U.S. at 30, 88 S.Ct. at 1884.

■ Assuming the validity of an investigatory stop, the police are not at liberty to conduct a protective search every time they make an investigative stop. *Id.* at 30, 88 S.Ct. at 1884. " 'The sole justification of the [*Terry* ] search ... is the protection of the police officer and others nearby....' " *Id.* at 29, 88 S.Ct. at 1884. Moreover, "[a] search for weapons in the absence of probable cause to arrest ... must ... be strictly circumscribed by the exigencies which justify its initiation." *Id.* at 25–26, 88 S.Ct. at 1882. The testimony of the police officer here fails

---

3. Our dissenting colleague suggests that the issue of the proper scope of the protective search under *Terry* is not properly presented in this case. We disagree. Appellant argued in his motion to suppress and at the suppression hearing that the stop and *search* were unlawful. Appellant challenges the constitutionality of the search, and the government relies, in part, upon safety concerns of the police officer to justify the officer's action

in ordering appellant to open his hand for what the government characterizes in its brief as "at most, a limited 'frisk' for weapons." The prosecution has the burden of "prov[ing] by a preponderance of the evidence that both the stop and the frisk were constitutionally permissible." *Mayes v. United States,* 653 A.2d 856, 861 (D.C. 1995). We conclude that the prosecution failed to meet that burden.

to show facts which bring the intrusion within *Terry's* narrowly drawn exception, which permits "a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." *Id.* at 27, 88 S.Ct. at 1883; *see Anderson v. United States,* 658 A.2d 1036, 1039 (D.C.1995); *see also Gray v. United States,* 292 A.2d 153 (D.C.1972). The self-protective search authorized under *Terry* does not permit a generalized search for contraband.

> Before [a police officer] places his hand on the person of a citizen in search of anything, he must have constitutionally adequate, reasonable grounds for doing so. In the case of the self-protective search for weapons he must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous.

*Sibron v. New York,* 392 U.S. 40, 64, 88 S.Ct. at 1903 (1967) (citing *Terry, supra* ).

The testimony at the suppression hearing did not reveal such facts. The officer's testimony made it clear that he thought that appellant had drugs in his fist when he grabbed him. We cannot impute a safety concern to the trained officer where he did not indicate in any way that he apprehended danger and where the evidence does not otherwise support such a claim. Nor can this court impute a safety concern from the mere fact that the officers believed appellant was buying drugs. Although we have recognized that "drugs and weapons go together," that connection standing alone is insufficient to warrant a police officer's reasonable belief that a suspect is armed and dangerous, and we have never so held. *See Griffin v. United States,* 618 A.2d 114, 124 (D.C.1992).

In *Griffin, supra,* police officers, executing a search warrant to look for drugs, waited 30 seconds after they "knocked and announced," then used a battering ram to force entry into an apartment for which they had a warrant to search for drugs. *Id.* at 115. The government sought to justify the forced entry on the basis that it is common knowledge that drug traffickers often use firearms, and that

to protect the officer's safety, they were justified in entering without delay. *Id.* at 124. This court ruled that "the existence of that unfortunate connection [between drugs and weapons], without more, cannot lend any substantial support to the government's position," because "to hold otherwise ... [the knock and announce statute] would be undermined to the point of inefficacy in any search warrant case involving alleged distribution of narcotics." *Id.* (citing *Gomez v. United States,* 597 A.2d 884, 890–91 (D.C.1991)); *Terry, supra,* 392 U.S. at 32, 88 S.Ct. at 1885. Similarly, in this case, to hold that the officers were justified in grabbing appellant merely because they suspected he had exchanged money for drugs would undermine the *Terry* requirement that frisks be undertaken only where the officers have a reasonable articulable suspicion that the suspect may be armed and presently dangerous.

Our decisions in *Peay, supra* and *Cousart v. United States,* 618 A.2d 96 (D.C.1992) (en banc), *cert. denied,* 507 U.S. 1042, 113 S.Ct. 1878, 123 L.Ed.2d 496 (1993) cited by the government, lend no support to the validity of the police action in this case. In *Peay,* in concluding that the detention was valid, we found significant that the suspect was clutching something in his hand which the police officer thought might be a weapon. 597 A.2d at 1321–22. In the case now before the court, the officer thought that appellant had drugs in his hand and wanted to recover them; he expressed no safety concerns.

*Cousart* is also distinguishable on its facts. In *Cousart,* we held that it was not an unconstitutional seizure for police officers to order Cousart, a passenger, out of a vehicle which was stopped after fleeing from the police at 3:30 in the morning, after Cousart failed to keep his hands in sight as requested. 618 A.2d at 100–01. We stated that the officers "complied with the mandate of *Terry* that justified their 'freezing' the situation very briefly while an ongoing and fast moving situation was clarified." *Id.* 618 A.2d at 100. At least two critical facts were present in *Cousart* which are not present here. First, the officer who gave the commands had joined the chase of a vehicle fleeing from police and was unaware of the nature of the

crime in progress. *Id.* Second, the passenger was asked to exit the car only after he dropped his hands out of sight and appeared to be moving something. *Id.* Even in *Cousart,* however, the "officers did not touch the passengers." *Id.* In this case, appellant was not in a vehicle where his hands and access to a weapon could be hidden. His hand, though closed around the suspected drugs, remained in view, and absent a particularized suspicion that appellant was armed and dangerous, there was no reason for the officer to grab him and to insist that he open his hand.

In judging the reasonableness of the police action, we must, of course, look at the totality of the circumstances. *See Brown, supra,* 590 A.2d at 1014. Even taken together, the facts disclosed by the evidence and found by the court fail to provide a basis for the officer to believe that appellant was armed and dangerous. *See Terry, supra,* 392 U.S. at 30, 88 S.Ct. at 1884. The officers had no knowledge of facts prior to the search from which they might reasonably infer that appellant possessed a weapon.[4]

After the initial stop, the officers immediately grabbed appellant and conducted a search of his closed fist, attempting to force his fist open to see what he held without specific and articulable facts from which it could be inferred reasonably that appellant was armed and presently dangerous. *See Terry, supra,* 392 U.S. at 27, 88 S.Ct. at 1883. Even assuming the validity of the initial stop, the search and seizure violated the Fourth Amendment's proscription against unreasonable searches and seizures. *Id.*

For the foregoing reasons, we reverse and remand with instructions to the trial court to grant appellant's motion to suppress tangible evidence.

*Reversed and remanded.*

FARRELL, Associate Judge, dissenting:

The majority holds that police officers who reasonably suspect they have seen a nighttime exchange of drugs for money in a neigh-

borhood known for drug sales and "weapons offenses," and so may stop and detain the buyer who, on seeing them, walks away with his fist balled up, nonetheless may not require him to open his fist unless they have objective reason to be concerned for their safety beyond the (for the majority) commonplace association of "drugs and weapons." I disagree with that conclusion. Preliminarily, though, the issue is not properly presented, for appellant's sole argument to the trial court was that the police lacked a reasonable basis to stop and *therefore* to search him; he never raised the issue of the scope of an allowable "protective search" under *Terry v. Ohio,* 392 U.S. 1, 26, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). As a result, the police officer who testified was never questioned about safety concerns that may have motivated him—even though his failure to voice such concerns is a critical reason the majority orders suppression. The majority thus reverses on a ground the prosecution had no occasion to meet and on which the trial court had no reason to make findings. In any event, on the facts before us, the action of the police in stopping appellant and "insist[ing] that he open his hand," *ante* at 985, was proper under the Fourth Amendment.

### I.

As the trial court found, the events all took place within seconds. Two officers in a marked scout car patrolling late in the evening in "an area known for open drug transactions, drug use [and] weapons offenses" saw appellant exchange money for unknown objects with the driver of a car he was standing next to. As the officers pulled up, appellant looked at them and began walking away with his right fist "balled up ... as if he was holding something." Believing they had just seen "a possible narcotics transaction," the officers alighted and one stopped appellant by taking hold of his arm and directing him to open his fist. When appellant did not comply and "fidget[ed] around a

---

4. In view of our conclusion that the search of appellant's hand was not warranted under *Terry,* we need not decide whether the police were justified in stopping appellant initially upon observing the exchange of money for money or for

an unidentified object. *See Duhart v. United States,* 589 A.2d 895, 899 (D.C.1991) (mere passing of unknown object or money does not justify a *Terry* stop).

lot," the officers tried to place his arms on the hood of the scout car. As they did so, the suspected seller sped off in his car, nearly striking another officer. As appellant resisted, he dropped objects from his hand which turned out to be crack cocaine.

The trial court concluded that in the circumstances of this quickly-developing situation,[1] including a valid *Terry* stop supported by reasonable suspicion, the combination of

> the defendant stepping back, walking briskly away, his having his hand tightly clenched, the police approaching him, his being fidgety, then the car zooming off with the driver, and the policemen being in the midst of trying to secure the situation, moving the defendant to a car, in the course of which he dropped ... the contraband, ... means that the contraband should not be suppressed.

## II.

The facts as summarized reveal that the police had reasonable grounds to stop and briefly detain appellant for investigation. The majority does not reach this issue, although it implies with a *"see "* citation, *ante* at 985 n. 4, that perhaps the police did not observe enough to warrant a stop. True, as this court said in *Duhart v. United States,* 589 A.2d 895, 899 (D.C.1991), "the mere passing of money on a street does not justify a *Terry* stop," but we deal here with the *exchange* of money for objects followed by the recipient of the objects seeing the police and departing, with his fist balled up, in a neighborhood known for open-air drug sales. That this provided reasonable suspicion that a drug buy had taken place should require no discussion. *See, e.g., United States v. Bennett,* 514 A.2d 414, 416–17 (D.C.1986); *Tobias v. United States,* 375 A.2d 491, 494 (D.C. 1977).

The majority concludes, nonetheless, that the circumstances did not justify the police' forcing appellant to open his closed hand during the investigative detention. There is a serious objection to this conclusion at the outset, which is that it rests on a ground not

asserted by appellant below. Not in his written motion to suppress, nor in questioning the officer who testified, nor in argument to the trial court did appellant argue that the order for him to open his hand exceeded the scope of a lawful *Terry* detention. His entire argument was that the police had no reason to stop him in the first place. The point is made succinctly in defense counsel's response to the court's oral finding of reasonable suspicion:

> [O]ur contention is that [the] stop was unlawful, there was no warrant and there was no articulable suspicion, but your Honor has concluded there was [and] at that point we don't have any further argument.

Whether appellant preserved the ground on which the court now reverses is not just academic. The majority repeatedly says the testifying officer "did not indicate in any way that he apprehended danger...." *Ante* at 984. Importantly, in distinguishing *Peay v. United States,* 597 A.2d 1318 (D.C.1991) (en banc), the majority states that, unlike in *Peay,* the officer here "expressed no safety concerns" over what the detained person might be clutching in his hand. *Ante* at 984. But, as pointed out, the officer was never asked if he had any such concerns, and appellant never made that an issue below; had he done so even in argument after the hearing, the trial court would have had the option to recall the officer and explore his perception of any risks to personal safety that prompted him to want to deal with appellant while his fists were unballed.

In any event, the Fourth Amendment test of reasonableness is an objective one, and "whether police officers in fact feared for their safety during an encounter with a suspect is not dispositive." *Womack v. United States,* 673 A.2d 603, 609 (D.C.1996). I would hold that when police officers at night in an area known for drug sales and weapons offenses lawfully stop a suspect for a drug crime, requiring him to unball his fist while they talk to him is *per se* a "reasonable step[ ] to insure their safety," *Cousart v. United States,* 618 A.2d 96, 100 (D.C.1992) (en banc), even if they think it most likely he

---

1. The court credited the officer's testimony that "these [events] were virtually contemporaneous, everything took place if not at once, within seconds ... of one another."

is holding contraband and not a weapon. A fist itself, of course, is more of a potential weapon than an open hand. More fundamentally, in regard to so limited an additional intrusion on personal freedom as ordering a detainee to unball his fist, the Fourth Amendment does not require the officer to calibrate his actions depending on the greater or lesser likelihood the detainee is concealing a weapon rather than drugs in his folded hand. *Cf. United States v. Barnes,* 496 A.2d 1040, 1045 (D.C.1985) (no Fourth Amendment seizure, without more, in asking person to remove his hands from his pockets and answer two questions); *Lawrence v. United States,* 566 A.2d 57, 62–63 (D.C.1989) (same; request to tell what defendant held in his clenched hand); *Cousart, supra* (passenger in car stopped for speeding and evading police may be ordered to put hands on car ceiling). Unlike, say, an ordinary traffic stop, police who confront a suspected drug seller or buyer on the street at night are inherently exposed to the danger of force or weapons being used against them.[2] A natural and legitimate part of " 'freezing' [such a] situation" in order to investigate, *id.,* 618 A.2d at 100, is insuring the detainee holds nothing concealed in his fist that could serve that purpose. That the officer also—or even primarily—believes the concealed object may be contraband is beside the point; the danger of such drug confrontations inherently justifies the limited intrusion beyond detention of an order to open one's fist. That intrusion is not the sort of *"arbitrary* interference [with personal security] by law officers" that the Fourth Amendment condemns. *Pennsylvania v. Mimms,* 434 U.S. 106, 109, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (quoting *United States v. Brignoni–Ponce,* 422 U.S. 873, 878, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975)) (emphasis added).

The majority supplies itself with a crutch by pointing out several times that the police "grabbed" appellant in addition to ordering him to unball his fist. But the officer testified that he "grabbed [appellant] as he was

walking away" after seeing the police approach in their marked car. It cannot be, and the majority does not appear to say, that the Fourth Amendment requires police to give a person reasonably suspected of an unlawful drug buy the choice to stop voluntarily as he moves to evade them, before they may seize his arm. That force and the additional struggle "to lift [appellant's] arms and to place them onto the car" was necessary, as the trial court reasonably found, because appellant resisted the stop and the order to unclench his fist. The near-simultaneous act of the driver in speeding off further confirmed the reasonableness of the police taking command of the situation with the moderate amount of force they employed.

I would sustain the denial of the motion to suppress and affirm the conviction.

2. Even in the traffic stop context, the Supreme Court has held that a passenger of a car stopped for a traffic violation may be ordered to get out of the car since the additional intrusion beyond the stop of the car is minimal and the fact "that there is more than one occupant of the vehicle increases the possible sources of harm to the officer." *Maryland v. Wilson,* 519 U.S. 408, ——, 117 S.Ct. 882, 885, 137 L.Ed.2d 41 (1997).