**Alfredo C. REYES, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 97–CF–1210.

District of Columbia Court of Appeals.

Argued Feb. 16, 2000.
Decided Aug. 24, 2000.

William Douglas Loeffler for appellant.

Elizabeth Trosman, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney, and John R. Fisher, Andrew J. Kline, and Heather R. Epstein, Assistant United States Attorneys, were on the brief, for appellee.

Before WAGNER, Chief Judge, RUIZ, Associate Judge, and BELSON, Senior Judge.

BELSON, Senior Judge:

After a jury trial, appellant Alfredo Reyes was found guilty of unlawful possession with intent to distribute a controlled substance.[1] On appeal, he contends that (1) the trial court erred when it denied his motion to suppress drugs seized from him during an investigative stop; (2) the trial court erred in denying his motion for judgment of acquittal; and (3) he was denied a fair trial when the government made improper statements in its closing argument. For the reasons stated below, we affirm.

1. D.C.Code § 33–541(a)(1) (1999 Supp.).

## I.

According to the evidence presented by the government at the hearing on defendant's suppression motion, Officers Carlos Torres and Steven Stretmater of the United States Secret Service Uniform Division were stopped at the intersection of Columbia Road and Ontario Road, N.W., when they noticed appellant in the 1700 block of Columbia Road, a block Torres described as an "open air drug market," and where he had previously made drug-related arrests. They observed appellant and a homeless man engaged in what appeared to be a narcotics transaction. Torres witnessed appellant take two small plastic-wrapped objects from inside a larger piece of plastic in his cupped left hand and hand them to the homeless man, who inspected the objects. Torres testified that he had stopped this homeless person earlier that day after receiving a complaint that he was smoking narcotics in the 3100 block of 16 th Street, N.W., and that the person had possessed a crack pipe at that time.

The officers proceeded through the light and made a U-turn when it was safe to do so. By the time they stopped, appellant had walked some distance along the street, and the homeless man had gone down an alley. The officers got out of their car and Officer Torres told appellant he wanted to talk to him. Appellant stopped. Officer Torres said: "Come over here." Appellant turned toward the officer and put his hands in his pants pockets, but did not come toward the officers. Officer Torres told appellant twice to take his hands out of his pockets, based on what Torres testified was a concern for his safety since appellant could have had a weapon in his pocket. Appellant eventually took his right hand out of his pocket. Torres then told appellant, in English and Spanish, to remove his other hand, and when appellant did not respond, the officers grabbed appellant and pulled him over to the police cruiser. After Torres again told appellant to take his left hand out of his pocket, appellant took his clenched left fist out of his pocket. The officers put appellant's hands on the car, and Torres told appellant to open his fist. At some point, a small bag of cocaine fell out of appellant's hand. Thereafter, appellant opened his left hand, revealing several small plastic wrappings containing a white-colored substance wrapped in a larger piece of clear plastic wrapping, and immediately stated that he had just purchased them and they were for his personal use. In total, appellant had in his possession thirty-three small packages of what tests later showed was crack cocaine. The trial judge denied appellant's motion to suppress the cocaine, ruling that Officer Torres had a reasonable suspicion to stop appellant, and that he then had reasonable grounds for requesting that appellant remove his hand from his pocket in order to protect the officer's safety.

## II.

■ Appellant argues on appeal that the facts of this case do not support an investigatory stop under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and that even if they do, they do not support the theory that the safety of the officers justified Officer Torres' subsequent actions. Giving due deference to the trial court's finding of fact, *see Brown v. United States,* 590 A.2d 1008, 1020 (D.C. 1991), and reviewing its legal conclusions *de novo, id.* (citing *United States v. Mendenhall,* 446 U.S. 544, 551–52 n. 5, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980)), this court must ensure that the trial court had a substantial basis for concluding that no constitutional violation occurred. *Id.*

■ "It is well established that the police may detain a person briefly on less than probable cause provided the officer has a reasonable suspicion based on specific articulable facts that the person is involved in criminal activity." *Upshur v. United States,* 716 A.2d 981, 983 (D.C. 1998). The minimal level of objective justification required to support an investigatory stop is "less demanding than that

required for probable cause" and "considerably less than proof of wrongdoing by a preponderance of the evidence." *Id.* (quoting *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989)). Once the police have effected a valid stop, they may conduct a protective search if they have reasonable grounds to believe that the suspect is armed and poses a danger to himself or others. *See Terry, supra,* 392 U.S. at 30, 88 S.Ct. 1868; *Upshur, supra,* 716 A.2d at 984; *Jackson v. United States,* 742 A.2d 883, 885–86 (D.C.1999).

■ We conclude that Officer Torres' stop of appellant was constitutionally permissible under the totality of the circumstances, including the surreptitious handing of objects to a known drug user; the fact the objects appeared to be wrapped in plastic, *see In re J.D.R.,* 637 A.2d 849, 850 (D.C.1994) (ziplock bags); *United States v. Bolden,* 429 A.2d 185, 186 (D.C.1981) (tinfoil package); *Price v. United States,* 429 A.2d 514, 516, 517 (D.C.1981) (manila "coin" envelope); *Munn v. United States,* 283 A.2d 28, 30 (D.C.1971) (tinfoil packets); the fact that the recipient of the objects inspected them; and the fact that the

block was known as an "open air drug market" where the officer had previously made drug-related arrests, *see In re T.T.C.,* 583 A.2d 986, 990 (D.C.1990).[2]

■ Once he stopped the appellant, Officer Torres was justified in taking measures to protect his safety if he could "point to particular facts from which he reasonably inferred that the individual was armed and dangerous." *Upshur, supra,* 716 A.2d at 984 (quoting *Sibron v. New York,* 392 U.S. 40, 64 (1967)). The facts here mirror those presented in *Peay v. United States,* 597 A.2d 1318, 1320, 1321–22 (D.C.1991) (en banc), where, reviewing a detention under *Terry,* we concluded that "specific and articulable facts" supported the officer's belief that his own personal safety was in peril, based on testimony that the suspect was clutching something in his hand which the police officer testified "could possibly have been a weapon, a small knife, possibly a gun." Here, Officer Torres testified that appellant turned toward the officers after they confronted him, placed both hands in his pockets, and finally removed only one hand after repeated requests that he remove his

---

2. Although a *Terry* stop was justified under the circumstances, Officer Torres' encounter with appellant could be viewed as an initially consensual encounter. "[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, [or] by putting questions to him if the person is willing to listen.... Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification." *Florida v. Royer,* 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (citations omitted). In *United States v. Barnes,* 496 A.2d 1040, 1045 (D.C.1985), we held that a police officer's request that the appellee remove his hands from his pockets, followed by two questions and appellee's voluntary answers, met the Supreme Court test for a pre-seizure consensual encounter.

However, "the officers, early in this encounter, adopted a posture displaying their authority which communicated very clearly to appellant that he was not free to simply ignore them and leave." *Hawkins v. United States,* 663 A.2d 1221, 1225–26 (D.C.1995). "The crucial test for determining whether a person has been seized is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *In re J.M.,* 619 A.2d 497, 499–500 (D.C.1992) (en banc) (quoting *Florida v. Bostick,* 501 U.S. 429, 437, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991)) (internal quotations and emphasis omitted). In *Hawkins,* an initially consensual encounter was transformed into a seizure when the police officer asked the appellant three times whether he was carrying a gun. 663 A.2d at 1228–29 (Farrell, J., concurring in result). Here, assuming *arguendo* that appellant was not seized when Officer Torres first approached him, he was seized after the officer told him several times to take his hands out of his pockets. This seizure was justified, not by appellant's failure to respond, *see infra,* but by the apparent drug transaction Officer Torres had witnessed.

hands from his pockets. The officer also testified that "you can conceal a knife, a small gun, any array of weapons in your hands." While we may not consider appellant's refusal to cooperate in considering whether Officer Torres had adequate justification to stop appellant, *see In re D.J.,* 532 A.2d 138, 141–42 (D.C.1987), we may consider appellant's placing his hands in his pockets and subsequently refusing to open his hand as generating a legitimate safety concern which justified Officer Torres' taking measures to protect his safety once a valid *Terry* stop had been initiated. Indeed, since Officer Torres was seeking reassurance that appellant was not armed and dangerous, appellant's failure to provide that reassurance justified a limited frisk or, in this case, opening appellant's hand.

The record thus supports the trial court's conclusion in this case that Officer Torres' actions were justified by an objectively reasonable belief that appellant might have a weapon in his clenched fist.[3]

### III.

■ Appellant's second argument is that the trial court erred when it refused to grant his motion for judgment of acquittal, because the government's expert, Detective Culver, answered affirmatively when asked whether drug dealers generally buy individual packages of drugs for personal use, and also because of appellant's assertedly spontaneous statement that he possessed the drugs only for personal use. In denying appellant's motion, the trial court credited Detective Culver's subsequent testimony that the quantity

and packaging of the drugs was consistent with distribution.

■ We reverse a trial court's denial of a motion for judgment of acquittal only where "the government has produced no evidence from which a reasonable mind might fairly infer guilt beyond a reasonable doubt." *Zanders v. United States,* 678 A.2d 556, 563 (D.C.1996) (quoting *Gayden v. United States,* 584 A.2d 578, 580 (D.C.1990), *cert. denied,* 502 U.S. 843, 112 S.Ct. 137, 116 L.Ed.2d 104 (1991)). Although, as the trial judge acknowledged, there was some confusion in Detective Culver's initial responses when asked whether drug dealers generally buy individual packages for personal use, he later explained at length why a drug user would not hold thirty-three packages of ten dollar rocks for his own personal use. On this evidence, a reasonable juror could fairly infer beyond a reasonable doubt that appellant intended to distribute the drugs. *See Taylor v. United States,* 662 A.2d 1368, 1372 (D.C.1995).

### IV.

■ Appellant's last argument is that he was denied a fair trial when government counsel engaged in improper closing argument. He takes issue with the government's statements that Officer Torres saw him distributing crack cocaine and that a person would not possess thirty-three packages of crack cocaine for his own personal use. Because appellant's trial counsel did not object to the statements at trial, our review is for plain error. *See Allen v. United States,* 649 A.2d 548, 555 (D.C.1994). In determining whether there was plain error, we consider "whether the

---

**3.** At oral argument, the government urged the division to adopt a "per se" rule whereby we would impute a safety concern to every officer conducting a *Terry* stop of a possible drug dealer. *See United States v. Smart,* 321 U.S.App. D.C. 216, 222, 98 F.3d 1379, 1385 (1996). We decline to address this argument since it was not fully briefed and because, in this case, "specific and articulable facts" supported the officer's concern for his personal

safety. *See Peay, supra,* 597 A.2d at 1320. *Compare Upshur, supra,* in which we held that the search was not justified where the police immediately grabbed the suspect and conducted a search of his closed fist for drugs, and the trained officer who conducted the search did not indicate, nor did the evidence suggest, that he had any safety concerns. *See* 716 A.2d at 984–85.

judge compromised the fundamental fairness of the trial, and permitted a clear miscarriage of justice, by not intervening, *sua sponte*, when the prosecutor made [the challenged] remarks...." *McGriff v. United States*, 705 A.2d 282, 288 (D.C. 1997) (quoting *Hunter v. United States*, 606 A.2d 139, 145 (D.C.), *cert. denied*, 506 U.S. 991, 113 S.Ct. 509, 121 L.Ed.2d 444 (1992)), *cert. denied*, 523 U.S. 1086, 118 S.Ct. 1542, 140 L.Ed.2d 690 (1998).

The government's statement that Officer Torres saw appellant distributing crack cocaine was a reasonable inference from the evidence that (1) Officer Torres saw appellant engaged in a transaction involving plastic bags taken from his hand, and (2) plastic bags taken from his hand immediately thereafter were found to contain crack cocaine. The government's statement that one would not possess thirty-three packages of crack cocaine for one's own personal use was simply a summary of the expert testimony. These arguments did not bring about error at all, much less plain error.

*Affirmed.*