Willis M. **DANIELS**, Jr., Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 21200.

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 16, 1968.

Decided March 29, 1968.

Mr. George B. Haddock, Washington, D. C. (appointed by this court), for appellant.

Mr. Joel M. Finkelstein, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on the brief, for appellee.

Before BAZELON, Chief Judge, and WRIGHT and LEVENTHAL, Circuit Judges.

PER CURIAM.

In September 1966 appellant was indicted on one count of robbery in violation of 22 D.C.CODE § 2901 (1967). After entering a plea of not guilty, he filed a motion to suppress certain items of evidence. This motion was denied and in April 1967 appellant was tried before a jury which returned a guilty verdict. In June he was sentenced to serve from 18 to 54 months in prison.

Appellant raises only one issue on appeal: that his arrest, and therefore the search incident to it, were illegal and consequently the evidence of the robbery taken from him during the search should have been suppressed. The facts of the case, as developed at trial, may be quickly stated.

At about 4:50 P.M. on September 5, 1966, as Miss Maria Belda, 71, was walking down the street, a man, passing from the opposite direction, grabbed her pocketbook and knocked her to the ground. Miss Belda, upon getting to her feet, gave chase. In so doing, she came upon a lady sitting on a bench who told her in which direction the fleeing man had gone. Miss Belda caught sight of the man once again but soon lost him. She then looked briefly for a policeman but was unable to find one. However, on her way home she saw an officer to whom she reported the robbery and gave a description of her assailant. The officer then called the station and drove Miss Belda around the neighborhood in search of the suspect.

At approximately 4:55 P.M. a police lookout was broadcast which was heard by two policemen who were cruising in the vicinity of the crime. The broadcast described the suspect as a Negro male, about six feet tall, of medium build and complexion, and wearing a yellow shirt and yellow trousers. A few minutes thereafter a man matching this description was spotted by the cruising policemen about three and a half blocks from the scene of the crime. The officers approached the appellant, told him he

matched the description of a robbery suspect, and asked him if he would accompany them to confront the victim. Appellant was then taken to Miss Belda who identified him as the man who robbed her. He was searched and in his pockets was found evidence that marked him as her assailant. This evidence uncovered by the search was admitted at appellant's trial.

We agree with the Government that the police had probable cause to make an arrest at the time they accosted appellant and asked him to accompany them for the purpose of identification. Appellant apparently concedes that a lookout describing him was broadcast and heard as the arresting officers testified. He maintains, however, that the Government has failed to prove the source of the information contained in the lookout. Citing a series of unidentified informer cases, e.g., Beck v. State of Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); Wrightson v. United States, 95 U.S.App. D.C. 390, 222 F.2d 556 (1955), he argues that once the legality of an arrest is challenged, the burden is on the Government to prove that there was probable cause for it.

But once it is conceded that the arresting officers were relying on a lookout adequately describing appellant, the rest of the Government's case for probable cause can be made inferentially. An analysis of the circumstances surrounding the crime, Miss Belda's report to the police, and the broadcast of the lookout suggests to us that the information in the lookout originated with the victim.[1] In the pretrial hearing defendant did not contend otherwise, nor did he introduce any testimony casting doubt upon the reliability of this source.

■■ There is no requirement that the arresting officer have sufficient firsthand knowledge to constitute probable cause. It is enough that the police officer initiating the chain of communication either had firsthand knowledge or received his information from some person—normally the putative victim or an eye witness—who it seems reasonable to believe is telling the truth. Admittedly the Government proved neither which officer was responsible for initiating the lookout nor who gave him the information contained in it. But again no point was made of this lack of proof in the District Court; such information may well have been available on request. In any event, in view of the strength of the inference raised by the testimony in the record, the absence of direct proof of the source of the lookout information is not a ground for reversal.

■■ There is, however, another issue which appellant has not raised but which recurs in cases of this sort and which we think appropriate to mention. Where there is a challenge to an arrest based on a police lookout, the Government should, when challenged, be required to produce a tape or log entry of that lookout if such proof exists, as it usually does. For only the tape or log entry is the best evidence of the information contained in the lookout. Though the tape is, of course, not strictly a writing, all of the reasons for the best evidence rule where the terms of a written instrument are contested apply where the content of an oral lookout, of which a recording has been made, is at issue. See C. McCORMICK, EVIDENCE §§ 195 et seq. (1954).

Affirmed.

---

1. The short interval of time between the crime and the broadcast of the lookout might suggest that the victim could not have contacted the police quickly enough for the lookout information to have been hers. But the time figures were merely approximations, and we do not read them literally in reaching our conclusion.