Lamont Y. HILL, Appellant,

v.

UNITED STATES, Appellee.

No. 91–CF–131.

District of Columbia Court of Appeals.

Argued Jan. 29, 1993.

Decided June 28, 1993.

Michael L. Spekter, Washington, DC, appointed by the court, for appellant.

Larry J. Gusman, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty. at the time the brief was filed, and John R. Fisher, Thomas C. Black, and Eric M. Acker, Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

Before TERRY, STEADMAN, and SCHWELB, Associate Judges.

TERRY, Associate Judge.

Appellant was convicted of distributing cocaine, in violation of D.C.Code § 33–541(a)(1) (1988). He contends on appeal that the trial judge erroneously applied the inevitable discovery exception to the exclusionary rule, thereby permitting illegally seized evidence—a $20 bill whose serial number had been pre-recorded—to be introduced at trial. Appellant also argues that the trial court's supplementary charge to the jury deprived him of a fair trial and jury unanimity. Because we conclude on other grounds that the $20 bill was lawfully seized, we need not decide whether the trial court erred in its application of the inevitable discovery doctrine. We reject appellant's other argument and affirm his conviction.

## I

Appellant Hill was arrested for selling two $10 packets of cocaine to Officer Victor Graves, a member of the Metropolitan Police Narcotic Task Force. As Officer Graves, working under cover, was walking in the vicinity of 57th Place and 57th Street, S.E., Hill called to him and motioned for the officer to come in his direction. When Graves asked Hill if he had any "shake" (cocaine), Hill replied that he did and led Officer Graves down an alley behind 57th Place. Hill then produced a brown paper bag containing several small ziplock bags of white powder. The officer used a $20 bill whose serial number he had pre-recorded to purchase two of the ziplock bags.[1] He then returned to his car and radioed information about the drug sale to an arrest team waiting nearby, describing the seller as "wearing a black cap, orange or rust colored shirt, dark colored pants."[2]

---

1. Later chemical analysis of the white powder in these bags confirmed that it was cocaine.

2. Graves testified on cross-examination that although there were "about a dozen" other people in the vicinity of the drug sale, he "didn't see anyone [else] in that immediate area with an orange shirt on."

The arrest team at first was unable to find anyone in the immediate area matching this description, so after five or ten minutes Officer Graves himself joined in the search. He soon spotted Hill standing on 57th Street with a woman (later identified as Sophia Bullard, Hill's fiancee) and another man. He immediately broadcast the location to his colleagues on the arrest team, and they went there, detained Hill, and notified Officer Graves that they had stopped a man who matched his description. Graves then drove past the spot where they were holding Hill and informed the arrest team by a pre-arranged signal that Hill was the man who had sold him the cocaine.

■ The testimony was in conflict about the circumstances of Hill's arrest. Officer Wayne Knox, a member of the arrest team, testified that he and his teammates came upon Hill, who matched the lookout, and stopped him. They walked him down the street toward the corner of 57th Street and 57th Place so that Officer Graves, who was not then on the scene, could make an identification. After Graves drove by and positively identified him, Officer Knox placed Hill under arrest and searched him. From Hill's pants pocket Knox recovered $56 in cash, which included a $20 bill with the same serial number as the one that Officer Graves had previously recorded. On cross-examination Officer Knox acknowledged that he had written incorrect information on a form known as PD–81. He said that although he filled out the form within hours of arresting Hill, he incorrectly wrote that he had searched Hill before (not after) Graves made his positive identification.[3]

Hill testified that he was leaning on a gate in front of a house at 57th Street and 57th Place when Officer Knox got out of a car, "jogged" over to him, and suddenly "pulled his gun out and told me not to move or he'd blow my head off." The officer searched him and found "fifty-six dollars and some change." Knox then directed him to walk toward a nearby intersection, but before they reached it, Knox told him to stop and look in a certain direction, "and the guy nodded his head, like that, and they put me in the car."

During the hearing on the motion to suppress, defense counsel argued that the officer's act of pulling out his gun made his seizure more like an arrest than a stop, that this arrest was made without probable cause, and that the evidence obtained as a result of that unlawful arrest—the $20 bill—must be suppressed. The prosecutor argued in response that Officer Knox had merely effected a stop, not an arrest; in the alternative, the prosecutor maintained that there was probable cause to arrest Hill. The court accepted Hill's version of the facts and initially suppressed the evidence, but later reversed itself and denied the motion on the ground that the $20 bill would inevitably have been discovered.

At trial Hill maintained that the police had arrested the wrong man. He testified that after attending a basketball game at the East Capitol Street Recreation Center, he headed toward his fiancee's house on 57th Place. As he walked down the street, he was approached by Officer Graves, who requested some "shake."[4] Hill told Graves he had none, to which Graves replied that someone down the street had told him that Hill would have drugs to sell. According to Hill, Graves then led him down the street to a man named Joe, who he said was the person who had reported that Hill could sell him some "shake." At

---

3. At the pre-trial hearing on the motion to suppress the $20 bill, the court found that the information on the PD–81 was correct, that Officer Knox had in fact searched Hill before Officer Graves' positive identification, and that Knox's testimony to the contrary was incredible. We give considerable deference, as we must, to these factual findings, and we may not disturb them unless they are plainly wrong or without evidence to support them. D.C.Code § 17–305(a) (1989); see, e.g., Davis v. United States,

564 A.2d 31, 35 (D.C.1989) (en banc); United States v. Lyon, 348 A.2d 297, 299 (D.C.1975). Our discussion of the legal issues in this case must accordingly be based on the trial court's factual findings.

4. Hill testified that Officer Graves "approached [him] by eye contact and a nodding of the head," but admitted that it was he himself who initiated the conversation.

this point, Hill testified, he left Officer Graves with Joe and walked away. After a few minutes Joe came up the street and repaid Hill some money he owed him on an earlier debt.[5] Moments later, several police cars pulled up, and Officer Knox ran up to Hill, "put [his gun] to the back of [Hill's] head and clicked it, and said, 'If you move, I'll blow your damn head off.' "[6] Knox then searched Hill's shoes, socks, underwear, and pants and found the incriminating $20 bill.

## II

Hill argues that the search of his person by Officer Knox before the positive identification by Officer Graves was impermissible, and that the $20 bill seized from his pants pocket should have been suppressed. This argument mirrors the initial position taken by the trial court when it first ruled on Hill's motion to suppress. It was on the next day, just prior to trial, that the court reconsidered its ruling and held that, although the evidence had been seized incident to an unlawful arrest, it would nevertheless be admissible under the "inevitable discovery doctrine" as set forth by the Supreme Court in *Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). Accepting the government's newly-made argument, the court said that because Officer Graves' positive identification, made only moments after the unlawful search, did in fact establish probable cause, Hill would then have been lawfully arrested and searched, and the money inevitably would have been discovered. *See District of Columbia v. M.M.*, 407 A.2d 698, 701–702 (D.C.1979).

■ We hold that the trial court erred in concluding, in the first instance, that probable cause to arrest Hill was lacking. The particularized description transmitted to the arrest team, together with the fact that the arrest team found Hill at the exact location stated by Officer Graves, certainly gave them probable cause to make an arrest. We therefore need not address the trial court's application of the inevitable discovery doctrine.

■ The trial court, in ruling on the motion to suppress, found that the police had "detained" Hill because "they believed that he matched the clothing description given by the undercover officer," but that "in the circumstances of this case [a positive identification] was a prerequisite to the acquisition of probable cause." Thus, while the court found the detention proper, it believed that the search, which preceded the identification, was illegal. Although Officer Knox testified that Hill was not searched until after the positive identification, the court rejected this testimony in favor of Hill's account of what happened, a factual determination which we have no reason to disturb. See note 3, *supra*. The court therefore concluded that the money seized from Hill must be suppressed. We hold that the trial court erred in concluding that the positive identification was a prerequisite to a finding of probable cause.

■ Given the facts as found by the trial court, we assume, without deciding, that when Officer Knox searched Hill's pants, underwear, shoes, and socks, Hill was not merely "detained" but had actually been "seized" and was under arrest. *See, e.g., Irby v. United States*, 342 A.2d 33, 37 (D.C.1975) (suspects were "effectively under arrest" when they were ordered out of car at gunpoint and searched); *Thompkins v. United States*, 251 A.2d 636, 638 (D.C. 1969) (arrest can occur before arresting officer announces it). The fact that the search may have preceded the formal announcement of arrest by a moment or two, however, is of no legal consequence. "Even though a suspect has not formally been placed under arrest, a search of his person can be justified as incident to an arrest if an arrest is made immediately after the search, and if, *at the time of the search*, there was probable cause to ar-

---

5. Hill said that Joe owed him money because Hill had previously purchased a T-shirt for him.

6. Hill's fiancee, Sophia Bullard, who was standing next to him when he was arrested, corroborated Hill's account of the arrest. Officer Knox testified that there was "a strong possibility" that at the time he stopped Hill, he pulled his gun.

rest." *United States v. Brown,* 150 U.S.App.D.C. 113, 114, 463 F.2d 949, 950 (1972) (emphasis in original; citations omitted); *accord, e.g., Rawlings v. Kentucky,* 448 U.S. 98, 111 & n. 6, 100 S.Ct. 2556, 2564 & n. 6, 65 L.Ed.2d 633 (1980); *Irby v. United States, supra,* 342 A.2d at 38 (citing *Bailey v. United States,* 128 U.S.App. D.C. 354, 357, 389 F.2d 305, 308 (1967)). Thus we can uphold the seizure of the $20 bill if, at the time of that seizure, the police (in the person of Officer Knox) had probable cause to arrest Hill for selling illicit drugs to Officer Graves.[7]

The government asserts before us, as it did during the suppression hearing, that Officer Knox had probable cause to arrest Hill. We agree. Two broadcasts were made to the arrest team by Officer Graves prior to Hill's arrest. The first contained a particularized description of Hill's clothing, and the second gave a specific location on 57th Street where Hill was standing.[8] These broadcasts were not so general as to be applicable to large numbers of people. *See Brown v. United States,* 590 A.2d 1008, 1017 (D.C.1991). Additionally, the fact that in the second broadcast Officer Graves pinpointed Hill's exact location for the arrest team adds a very strong element to the totality of circumstances that constituted probable cause. *See, e.g., Turner v. United States,* 588 A.2d 280 (D.C.1991) (probable cause established by phone call to police from paid informant stating that a man "wearing a burgundy sweatshirt jacket, burgundy sweat pants, and a black Coca–Cola cap turned backwards, was holding and selling cocaine in front of 1424 Chapin Street, N.W."); *Daniels v. United*

*States,* 129 U.S.App.D.C. 250, 251–252, 393 F.2d 359, 360–361 (1968) (broadcast described robbery suspect as "about six feet tall, of medium build and complexion, and wearing a yellow shirt and yellow trousers"; finding of probable cause upheld when "a man matching this description" was spotted by police five minutes later, less than four blocks from scene of crime); *Territory of Guam v. Ichiyasu,* 838 F.2d 353, 357 (9th Cir.1988) (important factor in probable cause determination is the "suspect's spatial and temporal proximity" to the scene of the crime); *Shriner v. Wainwright,* 715 F.2d 1452, 1454 (11th Cir.1983) (finding of probable cause upheld when suspect matching description was found in "temporal [next day] and geographic [same county] proximity"), *cert. denied,* 465 U.S. 1051, 104 S.Ct. 1328, 79 L.Ed.2d 723 (1984); *United States v. Miroyan,* 577 F.2d 489, 493 (9th Cir.) (finding of probable cause upheld when police had knowledge that suspect had been in the same area, a hotel lobby, shortly before police arrived, despite very general description), *cert. denied,* 439 U.S. 896, 99 S.Ct. 258, 58 L.Ed.2d 243 (1978); *United States ex rel. Wright v. Cuyler,* 563 F.2d 627, 630 (3d Cir.1977) (factors to consider in determining probable cause are specificity of description and "time and geographic factors"); *Ralph v. Pepersack,* 335 F.2d 128, 132–133 (4th Cir. 1964) ("totality of circumstances," including suspect's proximity to crime scene minutes after screams were heard, along with general description, established probable cause), *cert. denied,* 380 U.S. 925, 85 S.Ct. 907, 13 L.Ed.2d 811 (1965).[9] We have no difficulty in holding that Officer Knox had

---

7. Our standard of review has been stated in several cases. We must "give deference to the court's findings of fact as to the circumstances surrounding the appellant's encounter with the police" and uphold them unless they are clearly erroneous. *Giles v. United States,* 400 A.2d 1051, 1054 (D.C.1979) (citations omitted). On the legal issue of whether there was probable cause to arrest, however, we make our own independent determination. *Id.; accord, e.g., Gomez v. United States,* 597 A.2d 884, 889 (D.C. 1991) ("an appellate court must accept the trial court's evidentiary findings if supported by substantial evidence, but reviews *de novo* that court's legal conclusions" (citations omitted)).

8. Because we base our holding on the information provided by Officer Graves in the two broadcasts, we need not decide whether the first broadcast, standing alone, would support a finding of probable cause.

9. *See also Bryant v. United States,* 599 A.2d 1107, 1112 (D.C.1991) ("proximity" of defendant to broadcast location of crime supports finding of reasonable suspicion to detain); *King v. United States,* 550 A.2d 348, 357 (D.C.1988) (fact that suspect who partially matched general description was found "within a short distance" of situs of drug sale sufficient for articulable suspicion).

probable cause, based on the two broadcasts from Officer Graves, to arrest Hill when he found him exactly where Graves said he was. It follows that the seizure of the $20 bill incident to that arrest must be upheld.

### III

█ Hill asserts that the trial court's supplementary instruction, given in response to a note the jury sent during deliberations, "was violative of due process and deprived appellant of his right to unanimity." Furthermore, he contends that the instruction invaded the province of the jury because it told the jurors that "they could consider the evidence only in a certain way."

The note from the jury read: "In reaching a verdict, can arrest procedures be determining factors, or are we solely to determine that he sold drugs to an undercover officer?" After discussing various options with counsel, the trial judge reinstructed the jury on the function of the court and jury, the burden of proof, and the presumption of innocence, and added the following:

> In determining whether the Government has established the offense charged against the defendant beyond a reasonable doubt, you must consider and weigh all the evidence in the case. However, the evidence in the case may be considered by you only to the extent that you deem it helpful in determining whether the Government has proven beyond a reasonable doubt that the offense charged was committed by the defendant.

Defense counsel objected to the sentence beginning with the word "However," arguing that this portion of the instruction had the effect of taking away some of the jury's function to consider the evidence. The judge rejected this argument, saying:

> I think that's an accurate statement of the law, and it is as balanced an instruction as I could come up with. They have to understand that. They have to know that they're not acting as the social conscience of the community to evaluate the wisdom of the drug laws, or the arrest

procedures, or anything like that. Their purpose is a narrower one, just to determine the facts, to determine whether the offense was committed, and the rest is beyond their function.

We agree with the trial judge's reasoning and find no fault with the supplemental instruction.

█ "Decisions regarding reinstruction of a jury are committed to the discretion of the trial court; absent abuse of that discretion we will not reverse." *Davis v. United States,* 510 A.2d 1051, 1052 (D.C.1986) (citations omitted). We have reminded trial judges that they must "be especially alert not to send the jury back to resume deliberations having most recently heard supplemental instructions which are unbalanced." *Id.* at 1053 (citations omitted). In this case we are satisfied that the trial judge was sensitive to these concerns and was careful to confine the jury to its proper function.

When the note first came to the judge's attention, he read it aloud to counsel and said:

> Well, it sounds to me as if they're ... asking whether they can factor into their determination of their verdict, any approval or more likely disapproval as to the arrest procedures. And clearly the answer to that would be no. But it seems to me that we have to fashion ... [a] response that does not presume that that is the particular issue that they're presenting, because we don't know for sure. Because to some extent, the arrest procedures, if that encompasses the timing of the arrest, vis-à-vis the timing of the alleged transaction, could appropriately be considered by the jury.

After discussing the matter at length with counsel, the judge said that he must instruct the jury that its function was to "determine whether the offense was committed," and that he should not leave the jurors with the "impression" that they could acquit the defendant because they disapproved of the police arrest procedures. He added:

> I will include in the instruction the directive that they may, certainly, and they shall, and may even say they should,

consider the circumstances of the arrest, to the extent that said circumstances assist them in determining whether the Government has proven beyond a reasonable doubt that the elements of the offense, that the offense was ... committed by the defendant.

The judge then gave the instruction which Hill now challenges.

 The supplemental instruction which the judge gave cannot be characterized as anything other than neutral and balanced. The judge was plainly aware of his duty not to emphasize unduly any particular aspect of the case; at the same time, he recognized that he had a duty to respond to the jury's question. *See Potter v. United States,* 534 A.2d 943, 946 (D.C. 1987) (reversible error occurs when court does not adequately answer jury's note); *Murchison v. United States,* 486 A.2d 77, 83 (D.C.1984) (obligation to respond to jury's confusion). Furthermore, the instruction was legally correct in telling the jurors that they had a duty to determine whether the proven facts warranted a finding that Hill was guilty of the crime charged, despite their possible distaste for the procedures used to effect the arrest. *See Hack v. United States,* 445 A.2d 634, 641 (D.C.1982) (Sixth Amendment unanimous verdict requirement obliges that the jury be in substantial agreement only as to what the *defendant* did). We find no legal error and no abuse of discretion in the supplemental instruction.

### IV

We hold that Officer Knox, when he first saw Hill in the location where Officer Graves said he would be, had probable cause to arrest Hill for selling a controlled substance to Officer Graves. We therefore conclude that the trial judge properly allowed the seized $20 bill to be introduced into evidence, despite his initial error in ruling that a positive identification by Officer Graves was essential to a finding of probable cause. We also hold that the supplemental instruction which the judge gave in response to the jury's note was carefully balanced and reflected no abuse of discretion. Hill's conviction is therefore

*Affirmed.*[10]

---

**10.** Hill also contends that the trial judge erred in denying his motion for judgment of acquittal. He specifically asserts that the evidence of distribution was "inadequate" because there was no "corroborative evidence which would link the plastic ziplock packets containing cocaine to the appellant other than the police officer's observation." This contention is totally without merit because no such corroboration is necessary. We have repeatedly held "that the identification testimony of a single eyewitness is sufficient to sustain a conviction of distributing a controlled substance (coupled, of course, with other evidence identifying the substance itself)." *Hill v. United States,* 541 A.2d 1285, 1288 (D.C. 1988). That standard was met in this case.