**IN THE SUPREME COURT OF TENNESSEE**
**AT NASHVILLE**
(HEARD AT CLARKSVILLE)

FILED

April 12, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | FOR PUBLICATION |
| | ) | |
| Plaintiff-Appellant, | ) | **Filed: April 12, 1999** |
| | ) | |
| v. | ) | SUMNER CRIMINAL |
| | ) | |
| BOBBY CRUTCHER, | ) | Hon. Jane Wheatcraft, |
| | ) | Judge |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | No. 01S01-9804-CR-00081 |
| | ) | |

**DISSENTING OPINION**

I respectfully dissent from the majority's decision in this case. In my view, the appellee had been arrested at the time his motorcycle was searched; therefore, the search was valid as incident to a lawful arrest. Even assuming, however, that the appellee had not been technically arrested at the time the search occurred, the search and arrest were substantially contemporaneous; therefore, the search was constiutionally valid as incident to a lawful arrest. Accordingly, I would reverse the judgments of the lower courts which ordered suppression of the evidence seized during the search and remand this cause to the trial court for further proceedings.

# I.

## SEARCH INCIDENT TO ARREST

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ." Similarly Article 1, Section 7 of the Tennessee Constitution guarantees "that the people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures . . . ." "[A]rticle I, section 7 is identical in intent and purpose with the Fourth Amendment." State v. Downey, 945 S.W.2d 102, 106 (Tenn. 1997). Therefore, both the federal and the state constitutions protect against unreasonable "searches" and "seizures." As the majority decision recognizes, under both the federal and state constitutions, a warrantless search or seizure is presumed constitutionally unreasonable unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement. State v. Simpson, 968 S.W.2d 776, 780 (Tenn. 1998).

The State contends that the search in this case was conducted in accordance with one of those narrowly defined exceptions to the warrant requirement -- a search incident to a lawful arrest. Chimel v. California, 395 U.S. 752, 762-63, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969); State v. Watkins, 827 S.W.2d 293, 295 (Tenn. 1992). When police officers make a lawful arrest of the occupant of an automobile, a search of the person arrested and of the passenger compartment of the vehicle is constitutionally permissible. New York v. Belton,

453 U.S. 454, 457, 101 S.Ct. 2860, 2862, 69 L.Ed.2d 768 (1981); Watkins, 827 S.W.2d at 295-96. Officers may conduct the search of the passenger compartment of the automobile even though the person arrested has been placed in the back seat of a police car. Id.

In this case, the trial court and Court of Criminal Appeals found that the appellee, Bobby Crutcher, had not been lawfully arrested prior to the search, and as a result the lower courts held the search constitutionally invalid as incident to a lawful arrest. In affirming the decisions of the lower courts, the majority characterizes the lower courts' conclusion that no lawful arrest occurred prior to the search as a *factual finding* and states that the evidence in the record does not preponderate against that finding.

While the majority states the correct standard of appellate review with respect to factual findings, State v. Odom, 928 S.W.2d 18, 22-23 (Tenn. 1996), the lower court's conclusion that the appellee had not been lawfully arrested at the time of the search is not a finding of fact, it is a conclusion of law, derived from an application of the law to the undisputed facts in this case. This Court is not bound by the conclusions of law of the lower courts and reviews such conclusions *de novo*. State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997). Reviewing *de novo* the legal conclusions of the lower courts, it is clear that the trial court and the Court of Criminal Appeals erred in finding the search in this case constitutionally invalid.

In concluding that the appellee had not been lawfully arrested, the majority

and the lower courts cite decisions of this Court from 1968 and 1947 for the proposition that an arrest in Tennessee is "the taking, seizing, or detaining of the person of another, either by touching or putting hands on him, or by any act which indicates an intention to take him into custody and subjects the person arrested to the actual control and will of the person making the arrest." West v. State, 221 Tenn. 178, 184, 425 S.W.2d 602, 605 (1968); Robertson v. State, 184 Tenn. 277, 284, 198 S.W.2d 633, 635-36 (1947). The undisputed facts in this record demonstrate that Officer Moniz apprehended Crutcher as he was crawling from the roadside brush, seized Crutcher's arm, and began the handcuffing process. These are certainly acts which "indicate an intention to take" the appellee into custody. In addition, Crutcher was lying on the roadside and subjected to the actual control and will of Officer Moniz at the scene of the accident. In my view, therefore, even applying the definition employed by the majority, the appellee had been lawfully arrested at the scene of the accident prior to the search. However, the definition of arrest applied by the majority and the lower courts is no longer the applicable standard.

Under current applicable law, an arrest occurs if, in view of all of the circumstances surrounding the incident, a reasonable person would have understood that he or she was not free to leave. California v. Hodari D., 499 U.S. 621, 627-28, 111 S.Ct. 1547, 1551, 113 L.Ed.2d 690 (1991); Michigan v. Chesternut, 486 U.S. 567, 573, 108 S.Ct. 1975, 1979 (1988); INS v. Delgado, 466 U.S. 210, 215, 104 S.Ct. 1758, 1762, 80 L.Ed.2d 247 (1984); Florida v. Royer, 460 U.S. 491, 502, 103 S.Ct. 1319, 1326-27, 75 L.Ed.2d 229 (1983) (plurality opinion); United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877,

-4-

64 L.Ed.2d 497 (1980)(plurality opinion of Stewart, J.); State v. Moore, 776 S.W.2d 933, 937 (Tenn. 1989); State v. Bragan, 920 S.W.2d 227, 242 (Tenn. Crim. App. 1995); State v. Darnell, 905 S.W.2d 953, 957 (Tenn. Crim. App. 1995); State v. Greene, 929 S.W.2d 376 (Tenn. Crim. App. 1995); 3 Wayne R. LaFave, Search and Seizure § 5.1(a) (1996); cf. State v. Anderson, 937 S.W.2d 851, 855 (Tenn. 1996) (test to determine whether a person is in custody and entitled to Miranda[1] warnings prior to interrogation is "whether a reasonable person in the suspect's position would consider himself or herself deprived of freedom of movement to a degree associated with a formal arrest."). It is an objective test which does not depend upon the subjective intention of the officer nor the subjective perception of the suspect. The subjective intent of the officer is relevant to the assessment only to the extent that the officer's intent has been conveyed to the person confronted. Chesternut, 486 U.S. at 575 n.7, 108 S.Ct. at 1980 n.7; Mendenhall, 446 U.S. at 554 n.6, 100 S.Ct. at 1877 n. 6 (plurality opinion of Stewart, J.); 3 Wayne R. LaFave, Search and Seizure § 5.1(a) (1996); see also Stansbury v. California, 511 U.S. 318, 323-25, 114 S.Ct. 1526, 1529-30, 128 L.Ed.2d 293 (1994), citing Berkemer v. McCarty, 468 U.S. 420, 440, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984); Anderson, 937 S.W.2d at 854 (uncommunicated belief that person is a suspect is irrelevant to Fifth Amendment custody determination).

Factors courts have considered to determine whether an arrest has occurred include the following: the time, place and purpose of the encounter; the

---

[1]Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

words used by the officer; the officer's tone of voice and general demeanor; the officer's statements to others who were present during the encounter; the threatening presence of several officers; the display of a weapon by an officer; and the physical touching of the person of the citizen. Mendenhall, 446 U.S. at 554, 100 S.Ct. at 1877; People v. Pancoast, 659 P.2d 1348 (Colo. 1982); 3 Wayne R. LaFave, Search and Seizure § 5.1(a) (1996).[2]

The majority opinion goes into great detail to distinguish between various Fourth Amendment seizures of the person and refuses to apply the "reasonable person" standard because it "fails to recognize the distinction between 'seizure' and 'arrest.'" I feel the distinction drawn by the majority is immaterial in the context of this appeal. While the scope of search permissible and the term used to describe a seizure vary, depending upon the quantum of individualized suspicion supporting the seizure, the definition of seizure does not vary. For example, if an officer has only a reasonable, articulable suspicion that a person has engaged in, or is about to engage in a crime, the officer may seize the person, but the duration of the seizure, and the scope of the search is limited to an investigatory stop and frisk. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Though the scope of the constitutionally permissible search is limited because the seizure is based only upon reasonable, articulable suspicion, the test

---

[2]Compare Anderson, 937 S.W.2d at 855 (factors relevant to determination of whether a reasonable person would consider himself or herself in custody for Fifth Amendment purposes include the time and location of the interrogation; the duration and character of the questioning; the officer's tone of voice and general demeanor; the suspect's method of transportation to the place of questioning; the number of police officers present; any limitation on movement or other form of restraint imposed on the suspect during the interrogation; any interactions between the officer and the suspect, including the words spoken by the officer to the suspect, and the suspect's verbal or nonverbal responses; the extent to which the suspect is confronted with the officer's suspicions of guilt or evidence of guilt; and the extent to which the suspect is made aware that he or she is free to refrain from answering questions or to end the interview at will.)

to determine whether the person has been seized is the same -- in view of all the circumstances surrounding the incident, would a reasonable person have understood that he or she was not free to leave. The standard for determining whether a seizure has occurred remains the same - regardless of whether it is an "arrest," based upon probable cause or an "investigatory stop," based upon reasonable articulable suspicion. It is the individualized suspicion which varies and delineates the scope of the search and the term used to describe the seizure. A lawful arrest, sufficient to support the search incident to arrest exception to the warrant requirement, is simply a Fourth Amendment "seizure" which is based upon probable cause. Therefore, in determining whether a lawful warrantless arrest has occurred, two questions must be answered: (1) did a seizure of the person occur, i.e., in view of all the circumstances surrounding the incident, would a reasonable person have understood that he or she was not free to leave; and (2) if so, was the seizure based upon probable cause. In this case, the majority recognizes that "Officer Moniz had probable cause to make an arrest at the scene." Therefore, the difference of opinion relates only to the first question -- whether a seizure occurred. The distinctions drawn by the majority are irrelevant to that question.

When the correct principle of law is applied to the circumstances of this case, it is clear that the appellee had been lawfully arrested at the time the search of his motorcycle occurred. The incident giving rise to this appeal occurred when Officer Moniz observed three motorcyclists pull away from a traffic light at a high rate of speed. When Officer Moniz activated his siren and lights, two of the motorcyclists pulled over. Crutcher, however, fled from Officer Moniz at speeds in

excess of one hundred miles per hour through a residential area just outside the city of Gallatin in Sumner County. Crutcher crashed his motorcycle and was apprehended by Officer Moniz as he was crawling out of the roadside brush. This was not a routine traffic stop which ordinarily does not result in an arrest. Officer Moniz witnessed Crutcher commit criminal offenses, reckless endangerment and evading arrest.[3] Crutcher was already on the ground when Officer Moniz arrived at the accident scene. Officer Moniz proceeded directly to Crutcher, seized Crutcher's arm, and moved it into a position to handcuff Crutcher. Officer Moniz released Crutcher's arm and did not handcuff him only because Crutcher complained of pain and injuries.[4] Though he did not handcuff Crutcher, Officer Moniz remained with him and was beside Crutcher when Officer Rich Evans arrived on the scene. Both officers stayed with Crutcher until he was taken to the hospital by ambulance. They repeatedly told Crutcher to remain still. Fortunately for Crutcher, the ambulance arrived quickly.[5] Though neither informed Crutcher that he was under arrest, formal words are not a condition precedent to the

---

[3]The majority's repeated references to issuance and service of an arrest warrant are puzzling. It is beyond dispute that the officer in this case had sufficient grounds to make a warrantless arrest. Officer Moniz witnessed the defendant committing crimes. Tenn. Code Ann. § 40-7-103(a)(1) (1997 Repl.).

[4]The trial judge in this case found that the "police officers acted very professionally. They probably saved this Defendant's life by not jerking him off the ground and arresting him, as it turned out he had a broken neck." Yet, because of the officer's professional conduct, the majority finds that no arrest occurred, concludes the ensuing search is constitutionally infirm, and suppresses the evidence found during the search. The majority's holding fails to recognize that the purpose of the exclusionary rule is to deter official law enforcement wrongdoing, see State v. Huddleston, 924 S.W.2d 666, 672 (Tenn. 1996), not to punish completely appropriate and highly professional police conduct.

[5]The majority relies upon the fact that the appellee was kept at the accident scene for only a few minutes as support for its conclusion that no arrest occurred, stating, "[t]he evidence reflects that the appellee was kept at the accident scene for only a few minutes while waiting on the arrival of an ambulance. Without more, there is no showing that the appellee was being detained by police for any reason other than medical treatment." These statements imply that police officers should detain injured suspects in need of medical attention on the side of the highway until all the formalities of a station house arrest are completed. That is certainly not a policy which this Court should encourage either explicitly or implicitly.

existence of a lawful arrest.[6]  Chesternut, 486 U.S. at 574, 108 S.Ct. at 1980.

Moreover, "an arrested person is not invariably taken to a police station or

confined; if an arrestee is taken to the police station, that is no more than a

continuation of the custody inherent in the arrest status."  Illinois v. Lafayette, 462

U.S. 640, 654, 103 S.Ct. 2605, 2609, 77 L.Ed.2d 65 (1983).  Finally, the testimony

of Officers Moniz and Evans that Crutcher was not arrested at the scene of the

accident does not control the determination.  "Arrest" is a legal term of art, and a

court must apply the law to the facts to determine whether an arrest has occurred.

Watkins, 827 S.W.2d at 296.

For all these reasons, I disagree with the majority and would conclude that

Crutcher had been arrested at the time his motorcycle was searched because any

reasonable person in Crutcher's position would have understood that he was not

free to leave in light of the circumstances.[7]  That being the case, I am of the

opinion that the warrantless search of Crutcher's motorcycle was valid as a search

incident to the lawful warrantless arrest.

## II.

## RAWLINGS V. KENTUCKY

---

[6]Though the majority repeats the well-settled proposition that formal words are not required to effect an arrest, the majority fails to apply the rule in this case.  Given the majority decision, it will be difficult for police to arrest either an intoxicated or unconscious person because it is difficult to inform such a person, either by words or actions, that he or she is being arrested.

[7]Indeed, "reasonable" is hardly an appropriate descriptive term for a defendant who believes that he is free to leave the scene of an accident which results because the defendant fled from police on a highway which travels through a residential area at speeds in excess of one hundred miles per hour.

However, even assuming that Crutcher had not been arrested at the time this search occurred, I am of the opinion that the warrantless search was constitutionally valid under the reasoning of Rawlings v. Kentucky, 448 U.S. 98, 111, 100 S.Ct. 2556, 2564, 65 L.Ed.2d 633 (1980). In that case, the United States Supreme Court held that a search may precede a formal arrest if the officer has probable cause to arrest at the time of the search and the fruits of the search were not necessary to support probable cause to arrest.[8] See Warden v. State, 214 Tenn. 314, 320, 379 S.W.2d 788, 791 (1964) (search which precedes arrest will be upheld if the two may be regarded as part of one and the same transaction).

In this case, there is no question that Officer Moniz had probable cause to arrest Crutcher at the scene of the accident for reckless endangerment and evading arrest. Moreover, none of the items discovered during the search of

_____

[8]This principle has been applied in an overwhelming majority of jurisdictions both before and after the United States Supreme Court rendered its decision in Rawlings. See Seay v. State, 651 So.2d 81, 83 (Ala. Crim. App. 1994); State v. Earl, 970 S.W.2d 789, 792 (Ark. 1998); State v. Valenzuela, 589 P.2d 1306, 1307 (Ariz. 1979); People v. Simon, 290 P.2d 531, 533 (Cal. 1955); People v. Sutherland, 683 P.2d 1192, 1196 (Colo. 1984); State v. Trine, 673 A.2d 1098, 1110 (Conn. 1996); Hill v. U.S., 627 A.2d 975, 978 (D.C. 1993); Collier v. State, 338 S.E.2d 724, 725 (Ga. App. 1985); State v. Delmondo, 512 P.2d 551, 554 n.2 (Hawai'i 1973); State v. Crabb, 688 P.2d 1203, 1209 (Idaho App. 1984); People v. Kolichman, 578 N.E.2d 569, 574 (Ill. App. 1991); Santana v. State, 679 N.E.2d 1355, 1360 (Ind. App. 1997); State v. Peterson, 515 N.W.2d 23, 25 (Iowa 1994); Commonwealth v. Brillante, 503 N.E.2d 459, 462 n.5 (Mass. 1987); Commonwealth v. Mantinez, 692 N.E.2d 92 (Mass. App. 1998); Lee v. State, 537 A.2d 235, 247 (Md. 1988); State v. Brooks,, 634 A.2d 1265, 1266 (Me. 1993); People v. Arterberry, 429 N.W.2d 574, 575 (Mich. 1988); State v. Varnado, 582 N.W.2d 886, 892 (Minn. 1998); State v. Bauman, 586 N.W.2d 416, 420 (Minn. App. 1998); Ellis v. State, 573 So.2d 724, 726 (Miss. 1990); State v. Meadors, 580 P.2d 903, 905 (Mont. 1978); State v. Brooks, 446 S.E.2d 579, 587 (N.C. 1994); State v. Twohig, 469 N.W.2d 344, 354 (Neb. 1999); New Hampshire v. DeGrenier, 571 A.2d 814, 816 (N.H. 1986); State v. Pena, 779 P.2d 538, 544 (N.M. 1989); State v. Jones, 678 N.E.2d 285, 291 (Ohio. App. 1996); State v. Elk, 439 P.2d 1011 (Or. 1968); State v. Green, 676 P.2d 938, 940 (Or. App. 1984); Commonwealth v. Trenge, 451 A.2d 701, 710 n.8 (Pa. Super 1982); State v. Moultrie, 451 S.E.2d 34, 37 (S.C. App. 1994); State v. Nguyen, 563 N.W.2d 120, 125 n.6 (S.D. 1997); Williams v. State, 726 S.W.2d 99, 101 (Tex. Crim. App. 1986); State v. Spurgeon, 904 P.2d 220, 227 (Utah App. 1995); Parker v. Commonwealth, 496 S.E.2d 47, 52 (Va. 1998); State v. McKenna, 958 P.2d 1017, 1021 (Wash. App. 1998); State v. Swanson, 475 N.W.2d 148, 154 (Wis. 1991); United States v. Bowden, 121 F.3d 710 (6th Cir. 1997); United States v. Miller, 925 F.2d 695 (4th Cir. 1991).

-10-

Crutcher's motorcyde were necessary or relevant to establish probable cause to arrest for those two offenses. Clearly, therefore, the officers had probable cause to arrest Crutcher at the scene of the accident. Moreover, the record establishes that Crutcher was released that same evening from the hospital to the custody of the Drug Task Force and remained in police custody until the next day when he was returned to the hospital.[9]

Though there is no bright-line rule, I would conclude that the search and arrest in this case were part of one and the same transacton because the delay between the two was caused solely by the defendant's need for medical treatment. Accordingly, even assuming Crutcher was not arrested at the scene, as the majority concludes, I would hold the search valid as incident to a lawful arrest under the reasoning of Rawlings.[10]

## CONCLUSION

Because I am of the opinion that the warrantless search of the defendant's motorcycle was valid as a search incident to a lawful arrest, I respectfully dissent from the majority decision. I would reverse the decisions of the lower courts which ordered suppression of the evidence and remand this cause to the trial court for further proceedings.

---

[9]The record reflects that on the evening of the accident Crutcher's x-rays were misread. The error was discovered the next day, and the hospital called police and asked that Crutcher be returned to the hospital for treatment of a fractured vertebrae.

[10]I disagree with the majority's decision to overrule State v. Moore, 949 S.W.2d 704, 706 (Tenn. Crim. App. 1997), a decision in which the intermediate appellate court upheld a search under circumstances similar to those present in this case.

I am authorized to state that Justice Holder concurs in this Dissenting Opinion.

_____
FRANK F. DROWOTA III,
JUSTICE

**Concur:**

Holder, J.