Brian J. PRINCE, Appellant,

v.

UNITED STATES, Appellee.

No. 00–CM–1048.

District of Columbia Court of Appeals.

Submitted Dec. 5, 2002.

Decided June 5, 2003.

Marylin Pierre, Gaithersburg, MD, appointed by the court, was on the brief for appellant.

Roscoe C. Howard, Jr., United States Attorney, and John R. Fisher, Roy W. McLeese, III, and Margaret A. Carroll, Assistant United States Attorneys, were on the brief for appellee.

Before WAGNER, Chief Judge, and TERRY and WASHINGTON, Associate Judges.

TERRY, Associate Judge:

After a non-jury trial, appellant Prince was convicted of one count of possession of marijuana. Before trial, appellant moved to suppress the marijuana, arguing both that the police lacked reasonable suspicion to stop the car in which he was a passenger and that the frisk conducted by the arresting officer exceeded its proper scope. After a hearing, the court denied appellant's motion. We affirm the denial of the motion to suppress (and hence the conviction), but on a ground different from that relied upon by the trial court.

I

On the night of January 6, 2000, shortly after 10:00 p.m., Officer Lance Andriani of the Metropolitan Police was on duty in the 1200 block of Valley Avenue, S.E. Standing in a "field area" (apparently a small park) near a building, approximately twenty-five to thirty yards from the road, Officer Andriani looked through his binoculars and saw a man in a black leather jacket "approaching vehicles [and] making transac-

tions." Although Andriani did not see an actual exchange of drugs for money, he believed that this man's "unusual" behavior was "consistent . . . with dealing drugs."

A short time later Officer Andriani saw this same man walk up to a red Saturn automobile with two people inside. From his vantage point, he was able to see the man in the black leather jacket approach the right front side of the red Saturn with a "small object" in his hand, which the officer suspected was contraband. Officer Andriani then saw this man "reach his hand into the vehicle, then pull his hand out without anything in that hand and the money in his other hand." Although he had binoculars, Officer Andriani could not clearly see the individuals in the red Saturn, the denomination of the money that changed hands, or the shape or size of the small object. Nor could the officer recall how many cars the man in the black leather jacket had approached before the red Saturn appeared on the scene.[1]

The Saturn then made a U-turn and proceeded down 13th Street. Officer Andriani sent out a radio broadcast, asking other officers in the vicinity to stop a red Saturn heading toward Southern Avenue on 13th Street "in reference to a narcotics transaction." Andriani testified that his radio lookout described the car, the number of occupants, and its direction of travel, and stated that the transaction involved the front-seat passenger in the car. At the time of this broadcast, Officer Carlos Mejia and his partner, Officer Rhodes,

were on patrol in the 3900 block of 13th Street, between Valley and Southern Avenues. Officer Mejia testified that he caught sight of the red Saturn between thirty seconds and one minute after hearing Andriani's radio call, and that there were no other red Saturns in the area at that time.

Mejia and Rhodes pulled the red Saturn over, alighted from their own car, and approached the Saturn, with Officer Rhodes on the driver's side and Officer Mejia on the passenger's side. After asking both the driver and the passenger (appellant) to get out of the car, Mejia told appellant that he "was going to perform a protective patdown for any weapons." Officer Mejia testified that as he patted appellant's waistband, he "slid [his] hand past the white coin pocket of [appellant's] pants," and at that point he "felt an object that was consistent with the packaging of marijuana." Although he did not manipulate the object in any way, he was able to feel "the texture of the marijuana" inside a "package," and concluded that it felt like "a grassy substance inside of a plastic bag."[2] Officer Mejia removed this object from appellant's pocket and saw that it was a plastic ziplock bag containing "a green weed-like substance." A field test showed, and a laboratory analysis later confirmed, that the substance was marijuana.

The trial court found that "there was a good basis for stopping the Saturn on Terry[3] grounds for further investigation."

---

**1.** The man in the black leather jacket was never identified at the hearing, and the record does not indicate whether he was arrested that night.

**2.** Officer Mejia came to this conclusion on the basis of his experience, which included approximately 300 patdowns. In about fifty or sixty of those patdowns, he had felt an object that he suspected was a bag of marijuana, and

in every case his suspicion turned out to be correct: "If I thought it was marijuana and I withdrew it [from the pocket of the person being patted down], it was in fact marijuana." When the court asked him if he had ever been wrong about this, he replied, "Not yet, no, ma'am."

**3.** See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

Crediting Officer Mejia's testimony that when he felt the object in appellant's pocket, he immediately believed it to be a bag containing marijuana,[4] the court ruled that the protective patdown was lawful. Before trial began the next day, the court denied appellant's motion for reconsideration, noting that it had also based its decision on the fact that Officer Mejia conducted the patdown knowing that "his partner around the corner [Officer Andriani] saw the passenger ... engaged in what he believed was a drug purchase."

## II

■ "In reviewing a trial court order denying a motion to suppress, the facts and all reasonable inferences therefrom must be viewed in favor of sustaining the trial court ruling." *Peay v. United States,* 597 A.2d 1318, 1320 (D.C.1991) (en banc) (citations omitted). In particular, "[w]e must 'give deference to the court's findings of fact as to the circumstances surrounding the appellant's encounter with the police' and uphold them unless they are clearly erroneous." *Hill v. United States,* 627 A.2d 975, 979 n. 7 (D.C.1993) (citation omitted). However, we review *de novo* the trial court's legal conclusions, *Gomez v. United States,* 597 A.2d 884, 889 (D.C. 1991), and make our own independent determination of whether there was either probable cause to arrest or reasonable suspicion justifying a *Terry* stop. *See Cauthen v. United States,* 592 A.2d 1021, 1022 (D.C.1991) (reasonable suspicion); *Brown v. United States,* 590 A.2d 1008, 1020 (D.C. 1991) (probable cause).

■ For reasons we shall discuss later in this opinion, we hold that the trial court was correct in ruling that the police had adequate reason to stop the Saturn, to order appellant to get out of the car, and to search his person. But even "[a]ssuming the validity of an investigatory stop, the police are not at liberty to conduct a protective search every time they make an investigative stop." *Upshur v. United States,* 716 A.2d 981, 983 (D.C.1998) (citation omitted). To justify a protective search, the police officer "must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous." *Sibron v. New York,* 392 U.S. 40, 64, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). In this case the government failed to show (because the prosecutor[5] neglected to ask the relevant questions) that Officer Mejia reasonably feared for his safety, nor is there any evidence in the record that would justify such an apprehension. In the absence of such evidence, this court "cannot impute a safety concern to the trained officer where he did not indicate in any way that he apprehended danger and where the evidence does not otherwise support such a claim." *Upshur,* 716 A.2d at 984.[6]

On the other hand, it has long been held that an appellate court may uphold a trial court decision for reasons other than those given by that court. *See, e.g., Purce v. United States,* 482 A.2d 772, 775 n. 6 (D.C. 1984); *Marinopoliski v. Irish,* 445 A.2d 339, 340 (D.C.1982). This principle can be traced back for several decades, *see Hel-*

4. The court said:
 I credit his testimony that when he felt it, based on his experience, he believed it to be drugs.... I credit his testimony that when he felt it, he believed it to be a ziplock of drugs or some package of drugs. He said marijuana. I credit his testimony.

5. The government is represented by different counsel on appeal. The name of the trial

court prosecutor does not appear in this opinion.

6. In *Upshur* the officer testified that he grabbed the defendant's hand because he believed the defendant was clutching drugs in his fist. We held that this fact "fail[ed] to provide a basis for the officer to believe that appellant was armed and dangerous." *Upshur,* 716 A.2d at 985.

*vering v. Gowran,* 302 U.S. 238, 245, 58 S.Ct. 154, 82 L.Ed. 224 (1937), and is firmly established in our case law. Relying on this well-settled rule, the government now argues, as it did in the trial court, that Officer Mejia had probable cause to arrest appellant at the time he was searched. If that was the case, then the search was incident to a lawful arrest, and Officer Mejia need not have feared for his safety before searching appellant's person. *See United States v. Robinson,* 414 U.S. 218, 224, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). Therefore, we may affirm the denial of the motion to suppress if we conclude, on the facts found by the trial court, that Officer Mejia had probable cause to arrest appellant at the time he was searched.[7]

■ "[T]he test for judging the existence of probable cause is whether 'a reasonably prudent police officer, considering the total circumstances confronting him and drawing from his experience,' would be warranted in the belief that an offense has been or is being committed." *Peterkin v. United States,* 281 A.2d 567, 568 (D.C.1971), *cert. denied,* 406 U.S. 922, 92 S.Ct. 1788, 32 L.Ed.2d 122 (1972) (citation omitted). "Probable cause is a flexible, common-sense standard that does not demand any showing that the officer's belief that he has witnessed criminal behavior be correct or more likely true than false." *Coles v. United States,* 682 A.2d 167, 168

(D.C.1996) (citation and internal punctuation omitted). Rather, the officer's belief need only be based on "reasonably trustworthy information at the moment of arrest ...." *Brown,* 590 A.2d at 1012. Guided by these principles, we hold that there was probable cause to arrest appellant as soon as Officer Mejia saw the red Saturn with appellant riding in the right front seat.

### A. The Two–Way Exchange

■ Citing *Duhart v. United States,* 589 A.2d 895 (D.C.1991), appellant argues that the mere passage of an unknown object for money does not justify a finding of probable cause. *Duhart,* however, does not support appellant's argument, because that case did not involve a two-way exchange of money for an object, but merely "a police officer observing two individuals standing on the sidewalk examining 'something.'" *Id.* at 901. On such a record, we held that there was no basis for even a *Terry* frisk.[8]

Here, however, there was a two-way exchange of money for a "small object," as there was in *Tobias v. United States,* 375 A.2d 491 (D.C.1977). Police officers in *Tobias* saw the defendant approach another man and hand an object to that man in exchange for an undetermined amount of currency. We upheld the trial court's finding of probable cause to make an ar-

---

**7.** Appellant was searched by Officer Mejia before he was actually placed under arrest, but "[t]he fact that the search may have preceded the formal announcement of arrest by a moment or two ... is of no legal consequence." *Hill,* 627 A.2d at 978. "Even though a suspect has not formally been placed under arrest, a search of his person can be justified as incident to an arrest if an arrest is made immediately after the search, and if, *at the time of the search,* there was probable cause to arrest." *United States v. Brown,* 150 U.S.App. D.C. 113, 114, 463 F.2d 949, 950 (1972) (emphasis in original; citations omitted).

**8.** This court has also found probable cause lacking when the evidence showed only the passing of money from one person to another, even in a "high narcotics area," without a transfer of anything in return. *See Haywood v. United States,* 584 A.2d 552, 556 (D.C.1990) ("the handing of money by one person to another person, standing alone, cannot give rise (in any neighborhood) to ... probable cause to arrest"). "Nor does the mere passing of money on a street ... give reasonable grounds to conclude that a narcotics transaction is taking place." *Gray v. United States,* 292 A.2d 153, 156 (D.C.1972) (footnote omitted).

rest, stating that "[t]he exchange of small objects for currency is an important and sometimes decisive factor in determining the existence of probable cause." *Id.* at 494 (citation omitted). Moreover, it is not necessary that the police officer be able to see clearly that the small object being handed from one person to another is contraband. *See, e.g., Coles,* 682 A.2d at 168 ("While the police officer could not see the contents of the plastic bag, our decisions nonetheless confirm that he had probable cause to believe he had witnessed an exchange of drugs for money" (citations omitted)); *Peterkin,* 281 A.2d at 567–568 (upholding trial court finding of probable cause based on police officer's seeing defendant, in a high narcotics area, giving "something out of a vial" to another man in exchange for cash).

Our determination of probable cause is not based solely on Officer Andriani's observation of an exchange of money for a "small object." Before the transaction with the red Saturn, the man in the black leather jacket approached at least one other car in the same suspicious manner as he approached the Saturn. Not only did this behavior appear to Officer Andriani, on the basis of his experience, to be consistent with selling drugs; it took place in a neighborhood that he knew, from patrolling it for the past two years, to be a high narcotics area. *See In re T.T.C.,* 583 A.2d 986, 990 (D.C.1990) ("the trial judge could properly take into account [the officer's] experience in making arrests in that area, his personal knowledge that a lot of crack cocaine was sold on that corner, and his observation of conduct consistent with a drug transaction"). Viewing the transaction in this context, we conclude that Officer Mejia had probable cause to believe that criminal activity was afoot.

 Although it was Officer Andriani—not Officer Mejia—who actually witnessed the transaction, that fact does not affect our decision. "There is no requirement that the arresting officer have sufficient firsthand knowledge to constitute probable cause. It is enough that the police officer initiating the chain of communication ... had firsthand knowledge ...." *Daniels v. United States,* 129 U.S.App. D.C. 250, 252, 393 F.2d 359, 361 (1968). "[W]hen faced with a fast moving sequence of events involving a number of police officers, a citizen's rights are protected if, at the time of the intrusion, the information collectively known to the police is constitutionally sufficient to justify that intrusion." *In re M.E.B.,* 638 A.2d 1123, 1133 (D.C.1993) (citation omitted); *accord, e.g., Smith v. United States,* 123 U.S.App. D.C. 202, 204, 358 F.2d 833, 835 (1966) ("probable cause is to be evaluated ... on the basis of the collective information of the police rather than that of only the officer who performs the act of arresting" (citations omitted)), *cert. denied,* 386 U.S. 1008, 87 S.Ct. 1350, 18 L.Ed.2d 448 (1967).[9]

## B. *The Description in the Radio Broadcast*

 Appellant also argues that even if the police had probable cause to believe that there was criminal activity going on, they did not have probable cause to believe he was involved in it. He bases this argument on the fact that the red Saturn was out of sight for approximately thirty to sixty seconds, asserting that "in an area with three large apartment complexes," the description given by Officer Andriani allowed Officer Mejia "to stop anybody"

**9.** Both *Smith* and *Daniels* are binding on this court under *M.A.P. v. Ryan,* 285 A.2d 310, 312

(D.C.1971).

who happened to be driving a red Saturn that night. We disagree.

■ It is of course true that "[d]escriptions applicable to large numbers of people will not support a finding of probable cause," *Brown*, 590 A.2d at 1017 (citation omitted), particularly when it is unclear how much time passed between the broadcast of a description and the sighting of a suspect who meets that description. *See id.* at 1018 (because there was no proof of when the informant provided police with the description, the trial court was "left to speculate" about how much time had elapsed). The radio broadcast in this case, however, was "not so general as to be applicable to large numbers of people," *Hill*, 627 A.2d at 979, especially when the evidence showed that there were no other red Saturns in the immediate vicinity. Moreover, Officer Mejia caught sight of appellant in the exact location where Officer Andriani's broadcast indicated he would be, after only thirty to sixty seconds had elapsed between the broadcast and the sighting of the red Saturn. Andriani had witnessed what appeared to be a drug transaction between the man in the black leather jacket and the passenger in the right front seat; appellant was that passenger.

On these facts, we hold that Officer Mejia had probable cause to stop the red Saturn and arrest appellant. *See Hill*, 627 A.2d at 976–977 (finding of probable cause upheld when a man described as "wearing a black cap, orange or rust colored shirt, dark colored pants" was in the exact location where a police officer said he would be, even though he initially was not spotted for "five or ten minutes"); *Daniels*, 129 U.S.App. D.C. at 251–252, 393 F.2d at 360–361 (finding of probable cause upheld when police saw a man matching a broadcast description of the suspect less than four blocks from the scene of the crime,

five minutes after the crime was committed).

## IV

The trial court erred by failing to determine whether Officer Mejia reasonably feared for his safety before conducting a protective frisk under *Terry v. Ohio*. The error was harmless, however, because at the time appellant was searched, Officer Mejia had probable cause to believe not only that criminal activity had occurred, but that appellant was one of the persons who had engaged in it. Appellant's conviction is therefore

*Affirmed.*