STATE OF VERMONT

ENVIRONMENTAL COURT

In re: Appeal of Maplewood,    }
Ltd.                            }
                                      }   Docket No. 166-8-00 Vtec
                                        }
                                        }

## Decision and Order on Cross-Motions for Summary Judgment

Appellant Maplewood, Ltd. appealed from decision of the Development Review Board (DRB) of the Town of Berlin, granting Appellee-Applicant LaGue, Inc.' s application for a conditional use permit. Appellant is represented by Paul S. Gillies, Esq.; Appellee-Applicant is represented by Brian J. Grearson, Esq.; the Town is represented by Robert Halpert, Esq. The following individuals: Randall W. LaGue, Henry A. LaGue, III, Henry A. LaGue, Jr., and Thomas McGoff, appeared initially as interested persons, representing themselves. They may all be associated with Appellee-Applicant but have filed nothing to that effect with the Court, nor have they withdrawn as parties, nor do they appear to be represented by Attorney Grearson. Neither they nor the Town participated in the briefing of these motions.

Appellant' s motion seeks summary judgment on the first three issues in its Statement of Questions: 1) whether the lot has sufficient frontage; 2) whether the lot is an existing small lot; and 3) whether the lot needs a variance before any consideration of this project. Appellee-Applicant seeks summary judgment that the portion of the project which is a permitted use in the district should be approved for lack of a timely decision from the DRB.

The following facts are undisputed unless otherwise noted.

Appellee-Applicant owns an approximately 60,720-square-foot parcel of land in the " CG" Commercial zoning district, on which exists a house to be demolished as part of the proposed project. The parcel appears to be rectangular[1], measuring 132 feet along the property line along the road (Paine Turnpike[2]), and approximately 460 feet in depth. The property has no right-of-way access; the only access is directly to the road. Appellant owns the property directly to the north of Appellee-Applicant' s lot, on which it operates a gas station and convenience store. Appellant also co-owns the property directly to the south of Appellee-Applicant' s lot.

Appellee-Applicant proposes to remove the existing structure, to construct a convenience store with fast-food drive-through restaurant, and a gas station with gasoline pumps in the front of the lot and diesel pumps in the rear of the lot. A gas station and a fast-food restaurant are conditional uses in the CG district; a convenience store is a permitted use in the district. The original application also proposed a car wash, but the application for car wash was withdrawn after the Zoning Administrator ruled that a car wash was not an allowed use in the district. The original application apparently[3] showed the building oriented with its entrance facing the street; the

revised application is described as " reorienting" the building, which the Court understands to mean that the building' s entrance was moved to face the lot' s longer dimension.

Method of calculating " lot frontage"

This is the second appeal in which this Court has had occasion to analyze the Town of Berlin' s rather unusual zoning requirements regarding " lot frontage" and " street frontage." In In re Appeal of Ran-Mar, Inc., Docket No. 60-4-99 Vtec (Vt. Envtl. Ct., Nov. 27, 2000), the Court noted that:

[d]uring the course of the hearing, it became apparent that neither Appellant nor the Town had measured lot frontage according to the definition in the regulations, which is the distance across the width of the lot at the building or proposed [building] front line, and which is required to be measured along the chord of a curve. Instead, both parties were acting on the basis of a measurement similar to that of "street frontage" (defined as the lineal distance of the lot along the edge of the traveled way), but measured along the proposed front lot line rather than along the traveled way.

It appears that the same error was made in the present case (which was decided by the DRB prior to the issuance of the Ran-Mar decision).

The Zoning Regulations set forth two frontage requirements: lot frontage and street frontage, each of which is defined in § I(8). ' Lot frontage' is defined as the " [d]istance measured across the width of the lot at the building front line or the proposed building front line. Curves shall be measured by the chord." The ' building front line' is defined as a line " parallel to the front lot line transacting that point in the building which is closest to the front lot line." In Article IV, a minimum lot frontage is provided for development in each zoning district. In the Commercial zoning district the minimum lot frontage is 150 feet.

'Street frontage' is defined as "[t]he lineal distance of the lot as measured along the edge of [the] traveled way. "However, the regulations do not otherwise refer to the term ' street frontage' nor do they require a minimum amount of street frontage, other than the general requirements for adequate access found in the definition of "lot[4]" or in the statutory requirement of frontage on a public road, public waters, or, with DRB approval, on a right-of-way at least 20 feet in width. § III(3).

By referring to the " width" of the lot, the definition of " lot frontage" must intend the measurement to be taken along the face of the building facing the road, regardless of where the entrance of the building is placed. This interpretation is supported by the common meaning of the " front" lot line, meaning the property line at the road or street. Cf., " front" yard minimum setback.

It appears likely the lot frontage of Appellee-Applicant' s parcel is about 132 feet, based on the incomplete site plan provided to the Court. However, technically, without agreement as to the fact that the measurement across the width of the lot at the face of the proposed building, parallel to the roadway[5], is 132 feet, the Court cannot completely grant Appellant' s Motion for Summary

Judgment on this issue. Therefore, Appellant's Motion for Summary Judgment is granted on Question 1 of the Statement of Questions, in that the lot frontage is to be measured across the width of the lot at the face of the proposed building facing the street, subject to confirmation by the parties that the lot frontage, as required to be measured by the Zoning Regulations, is 132 feet. The Court specifically notes that changing the "orientation[6]" of the building on the lot does not affect this measurement.

Whether the lot is an " existing small lot"

Appellee-Applicant's parcel is not an existing small lot under 24 V.S.A. § 4406(1) and § III(2), because it is conforms to the minimum lot size requirements of the Commercial zoning district. Appellee-Applicant's parcel is 60,720 square feet in area; the minimum lot size is 40,000 square feet.

Appellee-Applicant argues that if the lot does not meet the lot frontage minimum, it is too small, and therefore qualifies as an existing small lot. Appellee-Applicant confuses the ' existing small lot' concept (§ III(2)) with the concept of a pre-existing, non-conforming lot (§ II(12)). Appellee-Applicant's lot may well be pre-existing and non-conforming as to lot frontage. If so, Appellee-Applicant may be entitled to apply to the DRB for change, enlargement or expansion to a nonconforming use under § II(12)(1), without having to apply for a variance. However, as Appellee-Applicant has not made such an application and the DRB has not acted upon it, the matter would have to be remanded to the DRB should Appellee-Applicant wish to pursue such an application.

Moreover, even if Appellee-Applicant's lot were undersized, the existing small lot provision only applies to an undeveloped parcel. Appellee-Applicant's lot is already developed with a house. See Lubinsky v. Fair Haven Zoning Bd., 148 Vt. 47, 50-51 (1986); In re: Appeal of Harrison, 48-3-99 Vtec (Vt. Envtl. Ct., July 14, 2000); In re: Appeal of Persis Corp., Docket No. 100-6-98 Vtec (Vt. Envtl. Ct., July 28, 1999) (the " existing small lot" provisions " only guarantee that an undersized lot may be developed at all for a reasonable economic use; and this undersized lot has been so developed. Those provisions do not guarantee indefinite expansion of uses on undersized lots." ), aff'd without published opinion, 758 A.2d 38 (2000).

Appellant's Motion for Summary Judgment is granted on Question 2 of the Statement of Questions: it is not an " existing small lot" under 24 V.S.A. § 4406(1) and § III(2), although it may qualify as a pre-existing, nonconforming use, entitled to apply for approval under § II(12)(1) of the Zoning Regulations.

Whether a variance from the frontage requirement is necessary

Assuming that the lot is a rectangle and that the lot frontage is therefore 132 feet under the principles established by this decision, we cannot conclude that a variance is required for the development of this lot, as it may qualify for consideration as a pre-existing, nonconforming use. § II(12)(1). Accordingly, Appellant's Motion for Summary Judgment on Question 3 of the

Statement of Questions is denied. Moreover, as the DRB has not ruled or been asked to rule on a § II(12)(1) application, this Court must remand the matter for that purpose, and therefore also for the DRB in the alternative to consider the variance application. It is inappropriate for the Court in its appellate role to consider those questions until and unless the DRB has considered them. In re Maple Tree Place, 156 Vt. 494, 500 (1991); In re: Appeal of Sullivan, Docket No. 69-4-00 Vtec (Vt. Envtl. Ct., Oct. 17, 2000).

Deemed approval of the site plan for the convenience store

Appellee-Applicant argues that the application should be deemed approved as to the convenience store, a permitted use, because the DRB failed to issue its decision on the site plan within the required 60 days. 24 V.S.A. § 4407(5). The initial application did not request site plan approval. While site plans were submitted in connection with the initial application (see DRB Decision, p. 2, § B(4)(c)), they are not before the Court and the Court cannot determine if they met the requirements of § II(10) for submission of site plans for approval. The DRB did not warn the meetings for site plan approval; they were warned for a variance and conditional use only. Nor did the DRB rule on site plan approval in the decision appealed from.

Because Appellee-Applicant did not apply for site plan approval of the convenience store permitted use independently of the application for the gas station and fast-food conditional uses, and may not have requested site plan approval at all, Appellee-Applicant's Motion for Summary Judgment granting it deemed approval of the site plan solely for the convenience store is denied.

Accordingly, based on the foregoing, Appellant's Motion for Summary Judgment is GRANTED on Question 1 of the Statement of Questions, subject to confirmation that the lot frontage, as required to be measured by the Zoning Regulations, is 132 feet. Appellant's Motion for Summary Judgment is GRANTED on Question 2 of the Statement of Questions: it is not an "existing small lot" under 24 V.S.A. § 4406(1) and § III(2), although it may qualify as a pre-existing, nonconforming use, entitled to apply for approval under § II(12)(1) of the Zoning Regulations. Appellant's Motion for Summary Judgment on Question 3 of the Statement of Questions is DENIED. Appellee-Applicant's Motion for Summary Judgment for deemed approval of the site plan solely for the convenience store is DENIED.

It appears to the Court that this decision concludes the appeal, despite Question 4 of the Statement of Questions. That is, it appears that the entire matter will have to be submitted to the DRB for an application under § II(12)(1) for a change, alteration or enlargement to a pre-existing nonconforming use, or for the DRB to act on a variance application, as well as for the DRB to act on the site plan approval required for all three proposed uses.

We will hold a conference on June 1, 2001 to discuss whether anything remains in the present appeal. If the four individual interested parties are, indeed, associated with Appellee-Applicant, and do not wish to participate in the conference, we can hold the conference by telephone with Attorneys Gillies, Grearson and Halpert. We will schedule it by telephone based on that assumption unless they inform the Court on or before May 29, 2001 that they wish to participate, in which case it will be held in person at the Washington District Court on North Main Street in Barre.

Done at Barre, Vermont, this 14th day of May, 2001.


_____
Merideth Wright
Environmental Judge


**Footnotes**

[1.]    The site plan provided as Attachment C to Appellant's Motion for Summary Judgment lacks the property line to the top of the page.

[2.]    We note that the parties refer to the road in various documents as "Paine Turnpike South" (Appellant); as "Paine Turnpike" (Appellee-Applicant) and as "Paine Turnpike North" (the zoning administrator and the DRB).

[3.]    The site plan supplied to the Court does not show the building's entrance.

[4.]    ". . . and having frontage on a street, or other means of access, as may be determined by the Development Review Board to be adequate as a condition of the issuance of a zoning permit for a building on such land."

[5.]    Or to the chord of the roadway if it is curved.

[6.]    There are a number of anomalies in the particular 'frontage' regulations in the Berlin Zoning Regulations, especially evident if a lot is not rectangular, or if a building is placed diagonally with relation to the street. Those anomalies do not affect the present appeal, but the Town may wish to review the purpose and function of its lot frontage regulations in this respect. Most towns regulate lot frontage at the front property line.

[7.]    The parties have not provided the date of the creation of Appellee-Applicant's lot, nor the date of the adoption of the 150-foot lot frontage requirement in the Commercial zoning district.

[8.]    We note that in the context of this case, it would be difficult for the parcel to qualify for a variance, as a reasonable use at present appears to be being made of the property as a residential rental single-family dwelling.